**Eugene HOLLANDER,**
**Plaintiff-Appellant,**

v.

**Stanley BREZENOFF, Commissioner of the Department of Social Services of the City of New York, Defendant-Appellee.**

**Docket No. 85–7573.**

United States Court of Appeals,
Second Circuit.

Submitted Oct. 24, 1985.

Decided April 10, 1986.

Jacob D. Fuchsberg Law Firm, New York City (Rosalind Fuchsberg Kaufman, Diane L. Welch, New York City, of counsel), for plaintiff-appellant.

Frederick A.O. Schwarz, Jr., New York City (June A. Witterschein, Margaret G. King, New York City, of counsel), for defendant-appellee.

Before OAKES, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal we must determine whether a three-year or a six-year limitations period governs claims against a local social services agency by a nursing home operator for medical services provided to financially assisted patients. Federal and state legislation provide for the delivery of medical services to the impoverished. Signing a provider agreement does not convert statutory mandates to a contract claim.

Eugene Hollander appeals from an order of the United States District Court for the Southern District of New York (Lasker, J.) dated April 13, 1984, 582 F.Supp. 1516, which granted the motion of Stanley Brezenoff, Commissioner of the Department of Social Services of the City of New York, for summary judgment pursuant to Fed.R. Civ.P. 56, and dismissed his complaint as time-barred. The district court based its decision on two findings: first, that appel-

lant's claims were subject to New York's three-year statute of limitations for actions arising from statutorily-created rights, CPLR § 214(2); and second, that these claims accrued outside the limitations period and were time-barred. On appeal appellant argues that a six-year contract limitations period should apply and that since triable issues of fact were presented regarding the dates when appellant's claims accrued, summary judgment was improper. We affirm.

## I FACTS

### A. *Background*

Congress enacted the Medicaid program to provide federal financial assistance to the states to cover the cost of necessary health care for impoverished persons. Each participating state is required to develop its own plan of implementation which must conform to the governing federal statute and regulations. In New York State, the Department of Social Services (DSS) processes the claims of New York City providers of medical care for Medicaid reimbursement, pays all valid claims, and thereafter seeks reimbursement from the federal government and New York State for their respective 50 and 25 percent shares of the cost.

To receive reimbursement a health care provider such as Hollander must submit an invoice within 90 days of providing the service, showing that allowable medical services were rendered to an eligible individual. After the invoice is submitted, the provider receives up to 95 percent of the invoice amount and the claim is audited. If the claim is allowed, the additional amount due is then paid. If disallowed, in whole or in part, the amount owed the City as a result of the disallowance is deducted from subsequent payments due the provider. The provider is then notified of the basis for rejection, permitted to remedy the problem, and allowed to "reclaim" or resubmit

the invoice within 30 days. Medicaid invoices are normally processed by the local agency within 60 to 90 days after submission, though some may take six months. Invoices not processed within six months are considered lost and must be resubmitted by the provider.

### B. *Proceedings Below*

The instant action was instituted on March 23, 1981 against appellee Brezenoff, as Commissioner of the DSS. Appellant is a former licensed operator of several nursing homes that provide nursing services to patients, including those eligible for medicaid assistance under the provisions of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (1982), and Title XI of Article 5 of the New York Social Services Law, §§ 363 *et seq.* (The New York Medicaid Program). From 1970–1976 appellant provided medical services to these financially assisted patients and submitted reimbursement requests for the services rendered. Hollander claims that he was under-compensated by $616,000 and the instant litigation was brought to recoup these funds. Two theories of relief are asserted. Under the first, appellant claims that his due process rights were violated by appellee when he was denied a predeprivation hearing. The second alleges that the appellee's actions violated the reimbursement provisions of the Social Security Act and the New York Medicaid Program. The appellees asserted counterclaims for approximately $91,000.[1]

Appellant attributed his inadequate reimbursement to two actions by the Secretary which he described as improper "deductions" from Medicaid reimbursements and "reclaims I submitted to defendant which were never processed." Hollander did not dispute that the improper deductions totalled $205,615.16, that each deduction occurred prior to 1977 and that he was notified of the deductions when they occurred. As to the rejected claims amounting to $338,672.81—for which reclaims were alleg-

---

**1.** A prior appeal, Docket No. 84–7437, was dismissed because due to the pendency of the counterclaim it was from a non-final order. This panel retained jurisdiction. On June 17, 1985 the district court certified its order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and this second appeal was submitted on October 24, 1985.

edly submitted—appellant states that the documents he produced "indicated the dates upon which all of the claims for which reclaims were filed were rejected or denied." Despite this assertion, appellant failed to identify a rejection date of any disputed invoice, indicating only the dates when he submitted them.

By affidavit furnished by the Chief Accountant in the Division of Medical Payments of the City Medicaid Program evidence was submitted that the local agency had rejected all of Hollander's claims well before March 23, 1978, the latest date when a claim could have remained viable under a three-year statute of limitations. He noted that the latest date that any of Hollander's claims would have been processed (i.e., accepted or rejected after audit) was six months after May 1976, which was the latest date appellant claims he submitted an invoice, unless an invoice had been lost. There is no claim that any invoice for which reimbursement was sought had been lost; Hollander alleged instead that these invoices had been improperly rejected.

In August 1983 the Commissioner moved for summary judgment arguing that the entire claim was barred by New York's three-year limitation period for statutory claims. Appellant responded that his claim arose from the "Provider Agreements" that Hollander had entered into with the DSS, and as such, its claim was contractual in nature and entitled to a six-year limitations period under CPLR § 213(2). Appellant also alleged a factual dispute as to whether the DSS processed the invoices submitted to it for reimbursement within six months, the DSS informed appellant of DSS action within six months of submission, and the DSS notified appellant that a claim was rejected with respect to each reclaimed invoice before March 23, 1978, the last date upon which a claim could have accrued and remained viable under a three-year limitations period.

The district court applied the three-year limitations period for statutory actions and found all claims time-barred. Although appellant had entered into a provider agree-

ment with DSS, such an agreement merely imposed record-keeping and information disclosure obligations upon the provider. Reimbursement liability is imposed by statute, rather than by the terms of the provider agreement. Consequently, the district court concluded that appellant's rights arose from the statute, and not the agreement. The district court also held that no factual dispute was presented as to the accrual date for appellant's claims. With regard to the claims for improper deductions, it held that appellant had admitted that the deductions occurred between 1970–76 and, therefore, he should have brought his claim within three years of learning of the deductions. As to Hollander's claims for improper rejection and failure to respond to his claims, the district court found that any claim not responded to within six months put a provider such as Hollander on notice of an improper rejection. With notice of the rejection also came notice of injury, and thus appellant knew that his claims were improperly rejected no later than December 31, 1976—six months after the last invoice was filed.

We turn to the two arguments presented on appeal—whether the selection of the three-year limitations period was correct, and whether there were any triable issues of fact. We examine each in turn.

## II DISCUSSION

### A. Statute of Limitations

When a federal statute does not provide for a specific limitations period, a federal court must look to the law of the state in which it sits to determine the appropriate time period for commencing suit. *Cope v. Anderson*, 331 U.S. 461, 463, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947). If there is no exact state counterpart to the federal claim then the limitations period for the state action most analagous to the federal claim is applied. *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 704–06, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *Pauk v. Board of Trustees of City University of N.Y.*, 654 F.2d 856, 861 (2d Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).

The Social Security Act provides no limitations period for the filing of claims. Because the entire Medicaid system, state as well as federal, is a product of statutory origin, as the district court noted, "any claim brought alleging violation of the Medicaid provisions is a claim whose liability is created or imposed by statute and appears therefore to be governed by [CPLR] 214(2)."

Appellant argues that the provider agreements control its relationship with defendants. A provider must agree to the terms of these agreements in order to become a recognized health care facility under the Medicaid statutes, and while the Medicaid statute regulates the contents of these agreements, 42 U.S.C. § 1396a(a)(27), and gives providers a right to reimbursement, whatever rights a provider acquires arise exclusively from the executed agreement. *Green v. Cashman,* 605 F.2d 945, 946 (6th Cir.1979). Therefore without the execution of these agreements, appellant contends, no right to reimbursement would exist.

Appellant relies on *Weinberger v. New York Stock Exchange,* 335 F.Supp. 139 (S.D.N.Y.1971), to support his position. There, an individual plaintiff commenced an action against the New York Stock Exchange, alleging that the Exchange failed adequately to supervise its member firms in violation of the contractual agreement it was required to enter into with the Securities Exchange Commission (SEC) under § 6 of the Securities Exchange Act of 1934. 15 U.S.C. § 78f (1982). Plaintiff sued as a third-party beneficiary of that contract and the district court concluded that the action should be governed by the six-year contract limitations period rather than the three-year statutory term, despite the fact that

the contract was one imposed by statute. "As an agreement it achieves a status of its own as a contract and should be governed by the statute of limitations applicable to contracts." *Id.* at 145. In examining the same statutory provision, the court in *Lank v. New York Stock Exchange,* 405 F.Supp. 1031, 1040 (S.D.N.Y. 1975), similarly held that while the Exchange was statutorily required to enter this agreement with the SEC in order to do business, the duty undertaken was contractual since the Exchange was not statutorily required to do business at all.

■ We recognize that provider agreements may achieve a status of their own as contracts, but appellant does not claim that any specific obligation undertaken in these agreements was breached. In *Weinberger,* the Exchange's failure to monitor member firms—exactly what it had obligated itself to do in its contract with the SEC—was the gravamen of the complaint. In contrast, here the relevant agreements merely obligate the providers to keep necessary records and furnish the state agency with that information upon request.[2] *See* 42 U.S.C. § 1396a(a)(27). They contain no substantive reimbursement provisions, nor is there language relating to reimbursement rights. By becoming a signatory, appellant obligated itself to perform record-keeping functions as a prerequisite for eligibility. The district court correctly concluded that Congress—when enacting section 1396a(a)(27) of the Social Security Act—did not aim to create a contract cause of action for the benefit of providers, but simply sought to facilitate the processing and transmission of information by providers supplying services under the Medicaid plan. 42 C.F.R. § 431.107 (1985).

The statute of limitations applicable to contracts is viewed more strictly by New York than by federal courts. Where a

---

**2.** The particular provider agreements in this case stated:

in consideration of receiving payments for services provided to individuals receiving assistance under the New York State Plan for Medicaid Assistance pursuant to Title XIX of the Social Security act, hereby agrees as follows:

(a) To keep such records as are necessary fully to disclose the extent of services provided by such individuals receiving assistance under the said plan and
(b) To furnish the New York State Department of Social Services with such information regarding any payments claimed by nursing home for providing such services as the Department may from time to time request.

duty undertaken by contract has already been imposed upon the parties by statute, the mere existence of the contract does not alter the parties' obligations to one another. Thus, an action to recover upon such liability is governed by the three-year statutory limitations period. *European American Bk v. Cain,* 79 A.D.2d 158, 163–64, 436 N.Y.S.2d 318, 321–22 (2d Dept.1981); *State of New York v. City of Binghamton,* 72 A.D.2d 870, 871–72, 421 N.Y.S.2d 950, 952–53 (3d Dept.1979). In the above cases, the obligations sued upon were terms embodied in the contracts or implied in the contracts, though imposed by statute. In this case, the alleged breach did not arise out of any terms or conditions in the provider agreements.

Appellant's reliance on *Florence Nightingale Nursing Home v. Blum,* 570 F.Supp. 285 (S.D.N.Y.1983), is also misplaced. Because the action had been commenced within the three-year period, the question raised was not whether the federal statute or the provider agreement governed plaintiff's right to reimbursement. In ruling on a motion to dismiss the complaint, the sole issue was whether, assuming the truthfulness of all plaintiff's allegations, any claim—statutory or contractual—could be asserted. We are not required to make such an assumption in the instant case. Consequently there is no basis upon which to impose the six-year limitations period.

The district court correctly held that plaintiff's cause of action does not arise from the provider agreements, but rather from his claim that the statutory and regulatory scheme entitling providers to payment for services properly reimbursable under Medicaid had been violated. *See* 42 U.S.C. § 1396a(a)(37); 42 C.F.R. §§ 447.1–447.371; New York Social Services Law § 367–a. It is precisely because appellant's right to seek reimbursement for the cost of services provided is derived from this statutory scheme that appellant can maintain this action in federal court as a claim arising under federal law. 28 U.S.C. § 1331 (1982).

We have said that a provider's right to reimbursement results from "a statutory business relationship." *Case v. Weinberger,* 523 F.2d 602, 607 (2d Cir.1975). Although the relationship may be effectuated by means of a provider contract, all rights to reimbursement arise under the applicable statutes. Just as we held in *Case,* 523 F.2d at 609–10, that some obligations of providers are statutorily determined (e.g., compliance with safety standards), so are a provider's rights statutorily determined, unless those rights are explicitly provided for in the agreement. Having determined the appropriate statute of limitations period, we turn to an analysis of whether there are any triable factual disputes concerning when the claims accrued.

B. *No Triable Factual Issues*

Because of the three-year limitations period, all claims accruing prior to March 23, 1978 are time-barred. The district court found that all of appellant's claims had accrued before that date. With regard to those claims for improper deductions, Hollander does not dispute that these deductions were made between 1970–76 and that he knew the deductions were made at that time. A claim alleging damages arising from these deductions accrues when notice is provided of the deductions. *Rand v. Brezenoff,* 555 F.Supp. 532, 533 (E.D.N.Y.1982). Since appellant conceded that he knew of the deductions no later than 1976, the limitations period for the last claim accrued in 1976, and all claims are now time-barred.

With respect to the rejected claims, appellant relies on the Chief Accountant's affidavit. Although certain that the claims had been rejected prior to March 23, 1978 the Chief Accountant could not provide the exact day of notification. Appellant asserts that because the dates of notification are unknown, a factual dispute exists as to whether the claims were processed or rejection notices sent.

Appellant's latest claim could not have been submitted after May 1976. His cause of action accrued on the date that he knew or should have known that the claims were rejected. *Id.* at 533. In *Rand,* the court noted that providers must resubmit their

original claims for reimbursement if they have not received responses on their initial filings. Failure to receive a response within six months of filing a claim puts a provider on notice of a failure to reimburse, and it then has the burden to either resubmit or refile its claim. *Id.* at 534. At that point, a provider's cause of action for that injury has accrued. *Id.* Thus, six months after submitting its last claim for reimbursement, appellant's cause of action accrued on all claims which were either rejected or for which appellant had received no response. November 1976 is therefore the cut-off date and this action filed in 1981 is untimely.

### III  CONCLUSION

The order is affirmed.