61 F.3d 608
 KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, Plaintiff-Appellee,
v.
REIMER & KOGER ASSOCIATES, INC., a Kansas corporation;
Ronald Reimer, an individual; Kenneth H. Koger, an
individual; Clifford W. Shinski, an individual; Brent
Messick, an individual; Robert Crew, an individual; Defendants,
Frank Morgan, an individual; Sherman Dreiseszun, an
individual; Leland Gerhart, an individual; I.I. Ozar, an
individual; Raymond Gifford, an individual; Harry S.
Jonas, an individual; Ralph E. Kiene, an individual;
Randall M. Nay, an individual; Defendants-Appellants,
Frank Sebree, an individual; Defendant,
Tony Salazar, an individual; Philip Pistilli, an
individual; Defendants-Appellants,
Michael K. Russell, an individual; Gage & Tucker, a law
partnership; Peat, Marwick, Mitchell & Co., an accountancy
firm; KPMG Peat Marwick, an accountancy firm; Robert
Spence, an individual, Defendants,
Frank Morgan; Sherman Dreiseszun; Leland Gerhart; I.I.
Ozar; Raymond Gifford; Ralph E. Kiene; Randall
M. Nay; Tony Salazar; Philip Pistilli,
Third-party plaintiff,
Resolution Trust Corporation, Third-party defendant.
 No. 94-3063.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1994.
Decided July 27, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Sept. 6, 1995.
 
 Charles Walter German, Kansas City, MO, argued (Brant M. Laue and Robert J. Campbell, on the brief), for appellants.
 Kenneth Philip Ross, Chicago, IL, argued (Robert F. Coleman, Eugene J. Schiltz, Eugene I. Pavalon, Geoffrey L. Gifford, and Robin R. LaFollette, on the brief), for appellee.
 Before MCMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 The former directors of Home Savings Association, a savings and loan now in receivership, appeal from a district court order denying their motion for summary judgment on the claims of Kansas Public Employees Retirement System, a creditor of Home Savings. The directors argue that KPERS' claims are barred by the statute of limitations. The district court held that Kansas limitations law applied, that the relevant Kansas statute of limitations, Kan.Stat.Ann. Sec. 60-522 (1994), was ten years, and that the claims were not time-barred. We reverse.
 
 
 2
 KPERS sued the former Home Savings Association directors,[1] alleging common law fraud and other torts and violations of the Kansas Securities Act in connection with KPERS' 1986 purchase of $65 million in debentures from Home Savings. After Home Savings was placed in receivership in March 1991, KPERS filed suit in state court in Kansas, joining the directors as defendants in December 1991. KPERS claimed, among other things, that the directors made misrepresentations in selling KPERS the debentures. The directors impleaded the RTC, asserting that the RTC's negligence caused the debentures to become worthless after the RTC took over as receiver for Home Savings. Acting under special authority granted it in 12 U.S.C. Sec. 1441a(l )(3) (Supp. V 1993), the RTC removed the case from the Kansas state court to the federal district court for the Western District of Missouri, Home Savings' principal place of business.[2]
 
 
 3
 The directors moved for summary judgment on the theory that KPERS' claims against them were barred under the Missouri law of limitations, which they argue became the applicable law at the time the RTC removed the case to the Missouri federal court, there being no applicable federal statute of limitations. The directors also argued that even if the law of Kansas should apply, the claims were still barred. At the time KPERS brought its suit, Kansas law prescribed a two-year statute of limitations for torts, Kan.Stat.Ann. Sec. 60-513(a), and a three-year statute for statutory claims, Kan.Stat.Ann. Sec. 60-512(2). While still in state court, the directors had moved to dismiss on the basis of the statute of limitations. The Kansas legislature promptly passed a ten-year statute of limitations applicable to civil actions brought by KPERS. Kan.Stat.Ann. Sec. 60-522, L.1992, ch. 321, S. 21. After the directors raised the argument that the new statute was inapplicable to causes that were already barred, the legislature amended the ten-year statute to provide that it should be "construed and applied retroactively." Kan.Stat.Ann. Sec. 60-522(c), as amended by 1993 Kan.Sess.Laws ch. 227 (H.B. 2211). The directors argued that the added language was not sufficient to revive KPERS' lapsed claims. They also argued that the ten-year statute violated the Kansas Constitution and the federal Equal Protection clause.
 
 
 4
 Regarding the choice of law question, the district court considered the effect of 12 U.S.C. Secs. 1441a(l )(1) and (3)(A).[3] Under section 1441a(l )(1), any suit to which the RTC is a party is "deemed to arise under the laws of the United States," and the district courts therefore have original jurisdiction over such suits. This grant of jurisdiction includes the entire suit, even though the RTC was only a third-party defendant. KPERS v. Reimer & Koger, 4 F.3d 614, 619, 620 (8th Cir.1993) (KPERS I ), cert. denied, --- U.S. ----, 114 S.Ct. 2132, 128 L.Ed.2d 862 (1994). Under section 1441a(l )(3)(A), the RTC can remove any action to which it is a party to its choice of three district courts: (1) the district with jurisdiction over the place where the case was pending before removal; (2) the district that was the principal place of business for the failed savings and loan in the case; or (3) the District of Columbia. The directors argued that whichever of these three districts the RTC chose became the "forum" for choice of law purposes. KPERS, on the other hand, argued that section 1441a(l )(3) is merely a venue provision, and that federal law dealing with change of venue retains the original place of filing as the "forum" for choice of law purposes.
 
 
 5
 The district court ruled in favor of KPERS, reasoning that to interpret section 1441a(l )(3) as permitting the RTC to select the "forum" for choice of law purposes from three possibilities would have three ill results, not intended by Congress. First, such an interpretation would make it impossible for the plaintiff to ascertain the applicable statute of limitations before filing suit. Second, the directors' interpretation would nullify the plaintiff's customary prerogative of choosing the forum, with the attendant control over choice of law. Finally, the directors' interpretation would frustrate one of the goals of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by preventing Kansas state law from governing what are essentially Kansas causes of action. The district court concluded these ill results would be avoided by treating section 1441a(l )(3) as a venue provision, and therefore applied rules used in administering 28 U.S.C. Sec. 1404(a) (1988), a change of venue statute. Under section 1404(a), state law causes of action transferred to a new venue take with them the statutes of limitation applicable in the transferor jurisdiction. See Van Dusen v. Barrack, 376 U.S. 612, 635-37, 84 S.Ct. 805, 819-20, 11 L.Ed.2d 945 (1964); Ferens v. John Deere Co., 494 U.S. 516, 526, 110 S.Ct. 1274, 1281, 108 L.Ed.2d 443 (1990). The district court considered this "look back" rule to be applicable to section 1441a(l )(3) cases, and therefore applied the statute of limitations of Kansas, the transferor jurisdiction.
 
 
 6
 The district court also held that under Kansas law, the ten-year statute was intended to revive KPERS' claims, and that the statute did not violate equal protection or the Kansas Constitution. The district court thus denied the directors' motion for summary judgment, holding that KPERS' claims were not time-barred.
 
 
 7
 The district court then dismissed the directors' claim against the RTC, reasoning that the RTC owed the directors no duty of care in its management of Home Savings, and therefore the directors could not sue the RTC for negligence. The directors moved for reconsideration, and the court granted the RTC permission to intervene for the limited purpose of responding to the directors' reconsideration motion. The district court then reaffirmed its earlier order dismissing the directors' third-party complaint.
 
 
 8
 Once the RTC was out of the suit, KPERS moved to remand the case to the state courts in Kansas. The district court denied the motion, retaining the case in exercise of the court's supplemental jurisdiction under 28 U.S.C. Sec. 1367 (Supp. V 1993).
 
 
 9
 The district court then certified the denial of summary judgment for interlocutory review under 28 U.S.C. Sec. 1292(b) (1988), and this court granted permission to appeal.
 
 I.
 
 10
 In order to determine whether KPERS' claims are time barred, we must decide the threshold choice of law question. According to the directors, the choice of law analysis is utterly simple: this is a removal case; in removal cases not governed by a federal statute of limitations, federal courts apply the limitations laws of the forum; therefore, Missouri limitations law governs this case. KPERS responds that 12 U.S.C. Sec. 1441a(l )(3) really presents a unique hybrid procedure--part removal and part change of venue. KPERS argues that we must invent new choice of law rules to deal with this situation by analogizing to the Van Dusen- Ferens doctrine developed in section 1404(a) change of venue cases, which (at least in state law cases)[4] retain the original forum's choice of law rules after transfer to a new venue.
 
 
 11
 Generally, in federal courts the limitations provisions of the forum state apply where the issue is not governed by federal statute. In diversity cases, this is because the forum state's limitations law governs, see Guaranty Trust v. York, 326 U.S. 99, 110-12, 65 S.Ct. 1464, 1470-71, 89 L.Ed. 2079 (1945), so that the issue is subject either to the forum's statute of limitations or the forum's borrowing statute. In a federal question case, where there is no federal statute of limitations, the federal court will borrow the forum state's limitations laws, if not inconsistent with federal law or policy. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 355, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (plurality) (if no federal statute, usual rule is to borrow "local" law); Reed v. United Transp. Union, 488 U.S. 319, 323-24, 109 S.Ct. 621, 624-25, 102 L.Ed.2d 665 (1989) (adopting "local" limitations period); Burnett v. Grattan, 468 U.S. 42, 48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984) (law of "forum"); Cope v. Anderson, 331 U.S. 461, 463, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1937) (applying borrowing statutes of forum state leads to ultimate application of statute from state where cause accrued); Vanderboom v. Sexton, 422 F.2d 1233, 1237 (8th Cir.) (forum state), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970).[5] But cf. McGhee v. Ogburn, 707 F.2d 1312, 1313 (11th Cir.1983) (says that federal court borrows statute of state "in which suit is filed"; case was pending in same state as where filed); Whatley v. Department of Educ., 673 F.2d 873 (5th Cir.1982) (same).
 
 
 12
 This case is a federal question jurisdiction case under 12 U.S.C. Sec. 1441a(l )(1). Whether the applicable substantive law is derived from federal or state authority is a question we need not answer here, since there is no applicable federal statute of limitations and therefore state law will govern, whether in its own right or as a borrowed rule. Cf. O'Melveny & Myers v. FDIC, --- U.S. ----, ----, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994) ("[K]nowing whether 'federal law governs' in the [United States v.] Kimbell Foods [440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ] sense--a sense which includes federal adoption of state-law rules--does not much advance the ball.") (citations omitted).
 
 
 13
 Therefore, if we view this case as an ordinary removal case, we must apply Missouri's limitations law, including its borrowing statute, Mo.Rev.Stat. Secs. 516.190 (1994), if applicable. But, as KPERS argues, section 1441a(l )(3) differs from other removal statutes in that the general removal statutes permit only removal within the same jurisdiction. See, e.g., 28 U.S.C. Secs. 1441-1444 (1988 and Supp. V 1993). 12 U.S.C. section 1441a(l )(3), on the other hand, permits the RTC to choose among three possible removal fora: the district where the case was pending, the district where the failed thrift had its principal place of business, and the District of Columbia. This feature of section 1441a(l )(3) introduces a factor not present in cases arising under the general removal statutes: by its choice of where to remove the case, the RTC can choose the "forum." If we apply the ordinary federal choice of law rules, the removal can bring about a change in the choice of law. This alters the plaintiff's customary prerogative of controlling the choice of law in a way that is not apparent on the face of the statute. Therefore, KPERS argues, section 1441a(l )(3) should be treated as a change of venue statute, and we should apply the Van Dusen- Ferens "look back" rules developed in change of venue cases.
 
 
 14
 Our analysis begins with section 1441a(l )(3) itself, which gives the RTC the three choices of forum. Obviously, the statute uses the term "removal," and though it specifies three possible districts, it makes no mention of "venue."
 
 
 15
 The legislative history gives no direct guidance. Section 1441a(l )(3) was first enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183 (1989). The statute originally permitted the RTC to remove only to the District of Columbia (or in cases arising out of the actions of the RTC with respect to an institution for which RTC had been appointed conservator, the district where the institution has its place of business). 103 Stat. 389-90. Neither the parties, the district court, nor this court have located any helpful legislative history showing whether Congress considered the choice of law ramifications of this provision. See RTC v. Westgate Partners, 937 F.2d 526, 530 (10th Cir.1991) ("[I]n the legislative history [of FIRREA], there is no evidence of Congressional intent whatsoever with regard to Sec. 1441a(l )").
 
 
 16
 In the RTC Refinancing, Restructuring, and Improvement Act of 1991, Pub.L. No. 102-233, Sec. 316, 105 Stat. 1772-73 (1991), Congress amended section 1441a(l )(3) to give the RTC more choices. In the 1991 Amendment Congress permitted the RTC to remove either to the District of Columbia or to the district in the place where the case was pending or to the district where the financial institution in question had its principal place of business. Again, we have located no helpful legislative history, and we can only surmise that the purpose of amending section 1441a(l )(3) may have been to relieve overcrowding in the District of Columbia district. See RTC v. Davis, 779 F.Supp. 181, 182 (D.D.C.1991). Or, it may reflect the fact that the RTC, the intended beneficiary of the 1989 removal provision, considered it to be "absurd" and inconvenient. See Westgate Partners, 937 F.2d at 530. Nothing in this legislative history indicates that Congress devoted any attention to the issue of choice of law upon removal.
 
 
 17
 KPERS argues that the genesis of section 1441a(l )(3) shows that Congress cannot have intended the jurisdictions specified for removal to be the forum for choice of law purposes. The original version of the statute provided only for removal to the District of Columbia; KPERS argues that Congress cannot rationally have intended District of Columbia local law to govern all RTC removal actions, and therefore we should not apply local law of the removal jurisdiction. This anomaly does not support KPERS' argument, because Congress arguably addressed the anomaly by amending the statute. The section now provides for removal to jurisdictions having a certain relation to the litigation. Therefore, the history of section 1441a(l )(3) leads just as easily to the conclusion that Congress discovered a problem with the section as originally enacted and corrected that problem to its satisfaction.
 
 
 18
 More generally, FIRREA and the RTC Refinancing Act of 1991 manifest an extreme concern with the savings and loan crisis and willingness to give the RTC broad powers in dealing with the crisis. See generally H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 294-312, 356-66 (1989), reprinted in 1989 U.S.C.C.A.N. 90-108, 152-62; H.R.Rep. No. 102-358(I), 102d Cong., 1st Sess. 33 (1991), reprinted in 1991 U.S.C.C.A.N. 1384, 1389.
 
 
 19
 In the absence of any directive from Congress, we are not authorized to import a body of venue law derived from an entirely different statute into section 1441a(l )(3).[6] In Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court held that the Van Dusen choice of law rules developed under section 1404(a) are unique to cases under that statute, and do not form any common law of venue applicable in non-section 1404(a) cases.
 
 
 20
 In Reyno, the Supreme Court applied the common law of forum non conveniens to a Pennsylvania case involving an air crash in Scotland, in which the decedents were all Scottish, as were their heirs and next of kin. The Reyno plaintiffs' only purpose in suing in the United States was to take advantage of more liberal products liability and wrongful death laws here. Transfer to Scotland was not available under section 1404(a), which only provides for transfer within the federal system, so the district court dismissed the case under the law of forum non conveniens. The Court of Appeals reversed, saying that under Van Dusen dismissal could never be appropriate where the law of the alternative forum was less favorable to the plaintiff than that of the forum where the plaintiff filed the suit. 445 U.S. at 244, 100 S.Ct. at 1122-23. The Supreme Court reinstituted the district court's judgment. The Court noted that the Court of Appeals had analogized from Van Dusen and the law of section 1404(a), but that reliance on Van Dusen is inappropriate in cases where section 1404(a) does not apply. 454 U.S. at 253, 102 S.Ct. at 264.
 
 
 21
 When section 1404(a) was enacted, it made transfer from an inconvenient venue more available than dismissal had been at common law, and therefore made forum shopping by defendants a more common problem. Permitting the defendant to change the choice of law rules by using section 1404(a) transfer was an unanticipated byproduct of a statute that was meant as a "federal judicial housekeeping measure," Van Dusen, 376 U.S. at 636, 84 S.Ct. at 819, and was not intended to change the balance of power between the parties. Van Dusen addressed that problem by developing the "look back" procedure whereby the transferee federal court could simply apply the transferor forum's law. Id. at 639, 84 S.Ct. at 820-21. Therefore, Reyno said the Van Dusen holding should not be seen as bearing on the common law, but as involving concerns unique to the law of section 1404(a): "The [Van Dusen ] rule was necessary to ensure the just and efficient operation of [section 1404(a) ]." 454 U.S. at 254, 102 S.Ct. at 265. We take Reyno as a caution against importing the Van Dusen- Ferens doctrine into a statutory scheme foreign to that which it was created to effectuate.
 
 
 22
 Moreover, Reyno discredits KPERS' argument that we cannot read section 1441a(l )(3) in such a way as to deprive a plaintiff of the "right" to select the applicable choice of law rules. The Reyno court did not consider this to be a sacrosanct privilege reserved to plaintiffs. "[T]he deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case." 454 U.S. at 256 n. 24, 102 S.Ct. at 266 n. 24. Reyno explained Van Dusen's concern with this privilege as the desire to effectuate a particular statute, section 1404(a), not as acknowledging some fundamental right. Though "the plaintiff is normally master to decide what law he will rely upon," BASF Corp. v. Symington, 50 F.3d 555, 557 (8th Cir.1995) (citation and internal quotation omitted), the rule is not invariable.
 
 
 23
 In contrast to section 1404(a), which was intended to be merely a "housekeeping" measure, section 1441a(l )(3) was part of FIRREA, a statute that was passed at the height of a national crisis and was intended to help resolve that crisis, partly through the instrumentality of the RTC. We would ignore Reyno if we relied on language from section 1404(a) cases emphasizing a plaintiff's privilege to select the forum and if we disregarded the apparent effect of section 1441a(l )(3) in permitting the RTC to choose its forum.
 
 
 24
 KPERS argues that permitting the RTC to control the selection of the forum would make the choice of law rules intolerably unpredictable. That argument depends on an implicit assumption that it is the plaintiff's ability to predict what the law will be that is of paramount importance. From the historical context and from the language of section 1441a(l )(3), it seems likely that Congress would have been more concerned with the RTC's ability to predict what the controlling law would be. This would be best served by letting the RTC control the choice of law.
 
 
 25
 We therefore reject KPERS' argument that section 1441a(l )(3) cases should be governed by the Van Dusen- Ferens rule, and hold that the limitations law of the forum state, Missouri, must govern this case.
 
 II.
 
 26
 Under Missouri law, KPERS' cause of action will be subject to the five-year Missouri limitation period for fraud, Mo.Rev.Stat. Sec. 516.120(5) (1994), unless "fully barred" by a shorter statute in the state where the cause originated, Kansas.[7] Mo.Rev.Stat. Sec. 516.190 (1994). The directors argue that KPERS' cause is barred under Kansas law because Kan.Stat.Ann. Sec. 60-522, the ten-year statute, is inapplicable and therefore that the two and three year Kansas Statutes, Kan.Stat.Ann. Secs. 60-512(2) and 60-513(a)(3) (1994), apply.
 
 
 27
 The directors argue that the Kansas ten-year statute of limitations does not apply to KPERS' case. When KPERS filed this lawsuit in December 1991 alleging fraud in a 1986 transaction, the applicable Kansas statutes were the two-year torts statute, Kan.Stat.Ann. Sec. 60-513(a)(3), and the three-year statute for statutory claims, Kans.Stat.Ann. Sec. 60-512(2). After the case was filed and the directors had raised the statute of limitations as a defense, the Kansas legislature enacted a new ten-year statute of limitations for actions by or on behalf of KPERS. Kan.Stat.Ann. Sec. 60-522 (signed into law May 22, 1992). On November 25, 1992, the directors moved for summary judgment, arguing that the new ten-year statute did not apply because the legislature had not expressed an intent to revive barred actions. Effective July 1, 1993, the legislature amended the statute to add section (c). The KPERS limitations statute now provides:
 
 
 28
 Limitations on actions brought by or on behalf of the Kansas public employees retirement system; retroactive application. (a) Notwithstanding any other limitations contained in article 5 of chapter 60 of the Kansas Statutes Annotated, any civil action brought by, or on behalf of, the Kansas public employees retirement system shall be brought within 10 years of the time in which such cause of action shall have accrued.
 
 
 29
 (b) The provisions of this section shall be part of and supplemental to the provisions of article 5 of chapter 60 of the Kansas Statutes Annotated.
 
 
 30
 (c) The limitations set forth in subsection (a) are to be construed and applied retroactively.
 
 
 31
 Kans.Stat.Ann. Sec. 60-522.
 
 
 32
 KPERS contends that section 60-522(c) is effective to revive its cause of action. The Kansas Supreme Court has recently considered whether the legislature may revive time-barred causes of action in Harding v. K.C. Wall Prods., Inc., 250 Kan. 655, 831 P.2d 958 (1992). Harding held that the legislature may constitutionally revive causes barred by statutes of limitation, but not those barred by statutes of repose. Id. 831 P.2d at 968. Harding specifically held that the two-year statute, section 60-513(a), is a statute of limitations. Id. 831 P.2d at 968. The directors do not dispute that section 60-512(2) is also a statute of limitations, not of repose. However, Harding required that in order to revive time-barred cases, the legislature articulate its intent plainly:
 
 
 33
 The legislature has the power to revive actions barred by a statute of limitations if it specifically expresses its intent to do so through retroactive application of a new law.
 
 
 34
 Id.
 
 
 35
 The statute in the Harding case emphatically and specifically expressed the intent to revive lapsed claims. Harding quoted the statute, emphasizing key language:
 
 
 36
 "Upon the effective date of this act through July 1, 1991, the provisions of this subsection shall revive such causes of action for latent diseases caused by exposure to a harmful material for: (1) Any person whose cause of action had accrued, as defined in subsection (d) on or after March 3, 1987 [the date of Tomlinson v. Celotex Corp., [244 Kan. 474] 770 P.2d 826 (Kan.1989) ]; or (2) any person who had an action pending in any court on March 3, 1989, and because of the judicial interpretation of the ten-year limitation contained in subsection (b) of K.S.A. 60-513, and amendments thereto, as applied to latent disease caused by exposure to a harmful material the: (A) Action was dismissed; (B) dismissal of the action was affirmed; or (C) action was subject to dismissal. The intent of this subsection is to revive causes of action for latent diseases caused by exposure to a harmful material which were barred by interpretation of K.S.A. 60-513, and amendments thereto, in effect prior to this enactment." (Emphasis added.) K.S.A.1991 Supp. 60-3303.
 
 
 37
 Harding, 831 P.2d at 963 (italics in statute added by Harding ) (boldface added by this court). In marked contrast to the explicit language at issue in Harding, section 60-522(c) states that it should be "applied retroactively," but does not make any mention of intent to revive time-barred actions. This falls far short of what Harding requires. Harding was on the books at the time the Kansas legislature added section 60-522(c); we can only conclude that the legislature did not intend to revive lapsed actions, since it did not include the language the Kansas Supreme Court had so recently required as evidence of such an intent.
 
 
 38
 Moreover, it is possible to effectuate the retroactivity provision of section 60-522(c) by applying it retroactively to cases that have accrued but have not yet been barred. Once a case has become time-barred, it is necessary under Harding for the legislature to revive it by specific language. 831 P.2d at 968. Providing that a statute of limitations should be "applied retroactively" is a broad brush approach to what is actually a more specific inquiry. Retroactive application can reach two categories of cases: first, a group on which the statute has not run at the time the statute is amended; and second, cases on which the existing statute has run at the time of amendment. The second group is affected not only by questions of the retroactive application of the statute, but also by the need to consider the question of revival of barred claims. This the decision in Harding makes clear. Harding discusses in detail the differences between a statute of repose and a statute of limitations, and issues relating to reviving causes of action barred by a statute of limitations. In a case such as is before us, the statute must, under the language and holding of Harding, address not only the issue of retroactivity, but revival as well. The statute before us did not do so.
 
 
 39
 We therefore reverse the district court's holding that the Kansas ten-year statute governs. Accordingly, we hold that the Missouri borrowing statute requires the district court to apply the Kansas two- and three-year statutes to KPERS' claims if the claims would be "fully barred" by these statutes (a finding of fact which has not been made). The directors do not ask that we determine "the ultimate limitations periods to be applied in this case and whether they bar KPERS' claims."
 
 
 40
 Our decision that section 60-522(c) does not revive causes of action that are barred makes it unnecessary that we reach the troublesome Kansas Constitution or federal equal protection arguments asserted by the directors.
 
 
 41
 We reverse and remand to the district court to determine whether KPERS' claims are time-barred under the applicable Kansas statutes.
 
 
 
 [1]
 The directors taking this appeal are the Estate of Frank Morgan, Sherman Dreiseszun, Leland Gerhart, I.I. Ozar, Raymond Gifford, Harry S. Jonas, Estate of Ralph E. Kiene, Randall M. Nay, Tony Salazar, and Philip Pistilli. KPERS sued other defendants who are not parties to this appeal
 
 
 [2]
 In an earlier opinion we dealt with KPERS' unsuccessful attempt to have its case remanded to the Kansas courts. Kansas Public Employees Retirement System v. Reimer & Koger Assoc., 4 F.3d 614 (8th Cir.1993) (KPERS I ), cert. denied, --- U.S. ----, 114 S.Ct. 2132, 128 L.Ed.2d 862 (1994)
 
 
 [3]
 Sections 1441a(l )(1) and 1441a(l )(3)(A) provide:
 (l ) Power to remove; jurisdiction
 (1) In general
 Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.
 (3) Removal and remand
 (A) In general
 The [RTC], in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the [RTC] has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the [RTC] as conservator or receiver of such institution....
 
 
 [4]
 There is some divergence of authority concerning whether the transferor district's choice of law can ever follow the case if the underlying cause of action arises under federal rather than state law. Compare Menowitz v. Brown, 991 F.2d 36 (2d Cir.1993), with Eckstein v. Balcor Film Investors, 8 F.3d 1121 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994)
 
 
 [5]
 We are aware of dictum in Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir.1995) (per curiam), that the "limitations period for a section 1983 action is governed by the statute of limitations for personal injury actions in the state in which the claim accrues." This dictum conflicts with the Supreme Court precedent we have cited looking to the limitations law of the state where the case is pending, supra. The dictum is easily explained by the fact that the state where the cause accrued was also the state where the case was pending. Moreover, if the forum state has a borrowing statute, it may require the federal court to apply the limitations period from the state where the cause accrued, which may explain the language in Sanchez. See, e.g., Cope, 331 U.S. at 464-68, 67 S.Ct. at 1341-44. See also Hawthorne v. Wells, 761 F.2d 1514, 1515 n. 7 (11th Cir.1985) (federal law borrows limitations period from "state in which it sits"); Hollander v. Brezenoff, 787 F.2d 834, 837 (2d Cir.1986) (same)
 
 
 [6]
 KPERS points to cases from other circuits referring to section 1441a(l )(3) as a venue provision, but these cases do not purport to apply section 1404(a) choice of law rules and are not relevant to our question. See 5300 Memorial Investors, Ltd. v. RTC, 973 F.2d 1160, 1163 (5th Cir.1992); Sweeney v. RTC, 16 F.3d 1, 3 n. 4 (1st Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 291, 130 L.Ed.2d 206 (1995)
 
 
 [7]
 The directors agree that Kansas law will ultimately apply, since the directors urge us to apply the Kansas two and three year statutes via the Missouri borrowing statute, and KPERS has always taken the position that Kansas law applied. The result of applying the borrowing statute is just the same as if we applied Kansas law in its own right, as KPERS urges us to do