_____

No. 95-4061

_____

```
                              *
                              *
In re:                        *
Kansas Public Employees       *        Petition for Writ
Retirement System,            *        of Mandamus.
                              *
                              *
      Petitioner.             *
                              *
                              *
```

_____

Submitted: January 11, 1996

Filed: June 11, 1996

_____

Before McMILLIAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

On December 7, 1995, Kansas Public Employees Retirement System (KPERS) filed a petition seeking a writ of mandamus directing the district judge[1] to disqualify himself under 28 U.S.C. § 455(a), (b)(1), and (b)(5)(iii). In addition, KPERS filed a motion to stay the pending district court proceedings until this court ruled on the mandamus petition. After hearing oral arguments, we denied the stay. We now deny the petition.

_____

[1]The Honorable D. Brook Bartlett, Chief Judge, United States District Court for the Western District of Missouri.

KPERS filed the basic underlying suit in which recusal is sought in Kansas state court in 1991, seeking damages allegedly sustained in 1986 in connection with KPERS' investments in Home Savings Association. Much of the litigation has involved attempts to control the choice of forum, with KPERS preferring a Kansas state court forum and the defendants preferring to bring this case to and keep it in federal court. After forging a winding trail, the case has again arrived at our doorstep. We set forth only those facts bearing on the issue before us -- whether we should direct the district court to disqualify himself under 28 U.S.C. § 455.[2]

On October 18, 1994, approximately two years after the case had been removed from Kansas state court to federal district court in the Western District of Missouri and assigned to the Honorable D. Brook Bartlett, United States District Judge,[3] three parties filed motions to intervene. These parties were Boatmen's First National Bank of Kansas City, Missouri (Boatmen's) and the law firms of Blackwell Sanders Matheny Weary and Lombardi, L.C.

---

[2]For more details on the facts of the underlying suit, see KPERS v. Reimer & Koger Assocs., Inc., 77 F.3d 1063 (8th Cir. 1996) (affirming district court's enjoining KPERS from filing lawsuits in Kansas based on same claims sued on in federal court); KPERS v. Reimer & Koger Assocs., Inc., 61 F.3d 608 (8th Cir. 1995) (reversing district court's decision that 10-year Kansas statute of limitations applied and remanding for determination of which of two shorter statutes apply), cert. denied, 116 S. Ct. 915 (1996); KPERS v. Reimer & Koger Assocs., Inc., 60 F.3d 1304 (8th Cir. 1995) (reversing the district court's denial of Blackwell's application to intervene); KPERS v. Reimer & Koger Assocs., Inc., 4 F.3d 614 (8th Cir. 1993) (affirming district court's order denying KPERS' motion to remand the case to state court), cert. denied, 114 S. Ct. 2132 (1994).

[3]By this time, Judge Bartlett had already spent a great deal of time on this case. (Tr. of Proceedings of 6/30/94, at 191 (stating that the court had already spent more time on this case than any other case but one in 10 years).)

(Blackwell) and Shook Hardy & Bacon, P.C. (Shook).[4] Judge Bartlett immediately informed the parties that attorneys in Blackwell's trust, estate, and taxation departments had provided him routine estate planning advice, had probated his deceased father's estate, and were probating his mother's estate, of which Judge Bartlett was a primary beneficiary. Judge Bartlett explained that the estate planning work for him was substantially complete[5] and that he was seeking no further legal advice from the firm. The court asked the parties to anonymously submit in writing any objections to his presiding over the case by noon, November 3, 1994.

On October 26, 1994, Judge Bartlett <u>sua sponte</u> disqualified himself from presiding over the applications to intervene and had them reassigned to another federal district judge.[6] Judge Bartlett recused himself from deciding Boatmen's application because he owned stock in Boatmen's parent company. His disqualification from deciding Shook's and Blackwell's applications stemmed from a concern that his rulings on these applications would affect Boatmen's application. Boatmen's motion to intervene was eventually stayed, and Boatmen's then filed a separate declaratory judgment action over which Judge Bartlett does not preside. <u>See</u> <u>Boatmen's First Nat'l Bank v. KPERS</u>, 57 F.3d 638 (8th Cir. 1995).

Noon, November 3, 1994, came and went, and no one, including KPERS, objected to the potential conflict involving Blackwell. That afternoon, however, another potential conflict arose. Shook

---

[4]Shook and Blackwell moved to intervene after KPERS notified them of KPERS' intention to file a separate suit against them in state court.

[5]All that remained was a transfer of some insurance to a new trust.

[6]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

advised the parties that it had offered a summer associate position to Judge Bartlett's daughter, Ms. Amanda Mook.

The following day, November 4, 1994, the court informed the parties that his daughter had accepted the offer from Shook and also that his son was probably a member of KPERS because he was the assistant city manager of the City of Hays, Kansas. The judge asked for comments on these matters, but no one offered any at that time.

The court followed up with a letter to the parties on November 9, 1994, restating the facts regarding his son and daughter and inviting anonymous objections to be submitted by November 21, 1994. KPERS, in a letter of November 18, 1994, expressing concern about Judge Bartlett's continued participation in the case because of his daughter's relationship with Shook, stated:

> Previously, we expressed no objection to Judge Bartlett's continued role as judge in this litigation by reason of his involvement with the estate and probate attorneys at Blackwell Sanders. By itself, we did not believe that Judge Bartlett's involvement with the Blackwell firm warranted significant concern.

(App. Pet'r at 195.) In KPERS' letter of November 21, 1994, it stated:

> Judge Bartlett previously notified the parties that he had retained Blackwell, Sanders for personal estate matters. The court required the parties to file by 12:00 p.m., November 3, 1994 notice of objections to Judge Bartlett continuing to preside over the case. All parties notified the court that they did not object.

(App. Pet'r at 173.) The letter then refers to the hiring of Judge Barlett's daughter by Shook, and continues:

4

>Despite their previous waiver, the parties should not be precluded from asserting the Judge's retention of Blackwell, Sanders in conjunction with Shook, Hardy's hiring of Judge Bartlett's daughter or the matters related to Boatmen as grounds for recusal. While each situation alone might not constitute sufficient grounds, all situations considered together might.

Id.

The court addressed the pending objection at KPERS' specific request at a hearing on December 16, 1994. At that time, KPERS volunteered that it had submitted the November 18 and 21 letters, and asked the court to recuse himself. KPERS noted that, although Shook was not yet a party, a partner of Shook was, and the partner had brought an indemnity claim against Shook. Judge Bartlett declined to disqualify himself, because he was persuaded by KPERS' original argument that consideration of recusal was premature until Shook's motion to intervene had been granted.

On December 29, 1994, Judge Whipple granted Shook its motion to intervene. KPERS took no action to renew its recusal request. In denying Blackwell's motion to intervene, Judge Whipple, considering the question of whether Judge Bartlett would have to recuse if Blackwell were allowed to intervene, made the following statement: "Considering the intervention of Blackwell Sanders, KPERS has expressly waived any objection to Judge Bartlett continuing to preside over the pending litigation." (App. Pet'r at 210.) In the appeal to this court by Blackwell on the issue of intervention, KPERS in its brief made no issue as to whether Judge Bartlett would be required to recuse, or to request that he do so. We reversed the district court's denial and permitted Blackwell to intervene by our decision filed July 27, 1995. No motion for rehearing or suggestion for rehearing en banc was filed. So, by the end of July 1995, Blackwell's intervention was assured, and Judge Bartlett's daughter was working at Shook as a summer associate. Still, KPERS took no action to renew its recusal

5

request.  During the ten-month period between December 1994 and October 1995, the parties engaged in full-blown discovery, deposing more than 60 witnesses, disclosing dozens of expert witnesses, and producing millions of pages of documents.  Although the parties participated in several pretrial conferences with the court, no one reasserted any issue of any potential conflict of interest on the part of Judge Bartlett during this period involving Boatmen's, Blackwell, or Shook.

In the meantime, on July 27, 1995, we reversed the district court's ruling on the applicable statute of limitations for this case.  Our ruling held that the ten-year statute of limitations did not apply to this case, and we remanded for a determination of which of two shorter Kansas statutes of limitations applied.  KPERS v. Reimer & Koger Assocs. Inc., 61 F.3d 608 (8th Cir. 1995), cert. denied,  116 S. Ct. 915 (1996).  Shortly thereafter, KPERS filed a motion asking the district court to reconsider its April 1994 holding that KPERS was acting in a proprietary capacity and was thus subject to the statute of limitations -- a decision KPERS did not attempt to appeal to this court.  In addition, KPERS filed duplicative suits in Kansas state court and filed its third motion to remand this case back to state court.  In response, the defendants filed motions seeking preliminary injunctions prohibiting KPERS from filing additional suits against the defendants.  The district court granted the preliminary injunctions[7] and set a hearing for October 18, 1995, to address several issues, including KPERS' motion to remand the case to state court and KPERS' motion for reconsideration on issues relating to the statute of limitations.

---

[7]KPERS appealed this ruling, we affirmed the injunction order.  KPERS v. Reimer & Koger Assocs., Inc., 77 F.3d 1063 (8th Cir. 1996).

On October 5, 1995, Shook notified the parties that it had offered Judge Bartlett's daughter a permanent position commencing September 1, 1996. On October 16, 1995, two days before the scheduled hearing, KPERS filed a motion requesting that Judge Bartlett disqualify himself, asserting the Blackwell, Boatmen's, and Shook employment issues. Defendants opposed the motion, stating that KPERS had filed the motion as a dilatory tactic to prevent the case from moving forward. The district judge postponed the hearing and denied KPERS' motion to disqualify on December 5, 1995.

On December 7, KPERS filed this petition, seeking a writ of mandamus ordering Judge Bartlett to disqualify himself from this case. KPERS also filed a motion to stay the district court proceedings pending our decision on the mandamus petition. After hearing oral arguments, we denied the motion for the stay. During the time between oral arguments and our decision on the petition, Judge Bartlett's daughter withdrew her acceptance of the associate position at Shook, deciding to reside and obtain employment in another city. We now decide the petition for a writ of mandamus.

## II.

KPERS lists three reasons supporting its claim that Judge Bartlett should disqualify himself: (1) Boatmen's is the plaintiff in a separate, but related, declaratory judgment action against KPERS, and Judge Bartlett owns stock in the parent company of Boatmen's; (2) Blackwell has performed estate planning work for Judge Bartlett, has probated the estate of Judge Bartlett's deceased father, and is probating the estate of the judge's late mother, which will include the closing of a trust of which Judge Bartlett is the trustee; and (3) Judge Bartlett's daughter had accepted during the pendency of this litigation defendant Shook's offer of employment as an associate attorney. KPERS contends that, separately, each of these facts mandates disqualification under

7

either 28 U.S.C. §§ 455(b)(1), 455(b)(5)(iii), or 455(a).  KPERS further argues that these facts cumulatively create an appearance of impartiality such that disqualification is necessary under § 455(a).

Defendants oppose the petition for the writ, arguing that KPERS brings this petition purely as a tactical move to delay the district court's consideration of the case and to avoid the pending decision on defendants' motions for summary judgment on the remanded statute of limitations issue.  Defendants also argue that any alleged interest Judge Bartlett has in this case is too speculative to fall within the purview of § 455(b)(5) and that no person who knows the facts and circumstances of this case would reasonably question Judge Bartlett's impartiality.

**A.**

The issue of recusal is before us on petition for a writ of mandamus.

> The writ of mandamus is an extraordinary remedy that should be utilized only in those `exceptional circumstances . . . amounting to a judicial usurpation of power.'  A federal court may issue a writ of mandamus only when the appellant has established a `clear and indisputable right' to the relief sought, the court has a nondiscretionary duty to honor that right, and appellant has no other adequate remedy.

Perkins v. General Motors Corp., 965 F.2d 597, 598-99 (8th Cir.) (quoting In re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986)) (alteration in original) cert. denied, 113 S. Ct. 654 (1992).

Our determination of whether an "indisputable and clear right" exists must take into consideration the discretion entrusted in the district court in deciding disqualification matters.  In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("An appellate court's power to issue a writ of mandamus upon a claim of

8

wrongful refusal to recuse is inextricably related to the scope of review over the district court's determination."), <u>cert. denied</u> <u>sub nom</u>, <u>Milken v. S.E.C.</u>, 490 U.S. 1102 (1989). In this circuit, whether disqualification is required in a particular case is committed to the sound discretion of the district judge, and we review only for an abuse of that discretion. <u>Perkins v. Spivey</u>, 911 F.2d 22, 33 (8th Cir. 1990), <u>cert. denied</u>, 499 U.S. 920 (1991). This is so because

> [t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion. In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.

<u>In re Drexel</u>, 861 F.2d at 1312. Accordingly, we presume Judge Bartlett is impartial, and KPERS bears "the substantial burden of proving otherwise." <u>Pope v. Federal Express Corp.</u>, 974 F.2d 982, 985 (8th Cir. 1992).

Considering together the mandamus standard and the abuse of discretion standard, the pivotal inquiry for determining whether KPERS asserts a clear and indisputable right to recusal and whether the district court had a nondiscretionary duty to honor that right is whether Judge Bartlett abused his discretion by refusing to disqualify himself from this case. In pursuing this inquiry, we must bear in mind that a writ of mandamus is an extraordinary remedy requiring a showing of exceptional circumstances. Because we ultimately conclude that the petition is a last hour tactical move as to the Boatmen's and the Blackwell matters and that the district court's decision not to recuse does not amount to an abuse of discretion on any of the issues, we do not address the question of whether another adequate remedy exists.

**B.**

Title 28, U.S.C. § 455 dictates the circumstances in which a judge must disqualify himself in a proceeding.

Subsection 455(a) requires a United States judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under § 455(a), we consider whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case. Lunde v. Helms, 29 F.3d 367, 370 (8th Cir. 1994), cert. denied, 115 S. Ct. 1111 (1995); United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981), cert. denied sub nom, Weigland v. United States, 455 U.S. 940 (1982). The words of the Senate Judiciary Committee, in recommending what became § 455(a) under the 1974 amendments to § 455, provide guidance for judges who must decide whether to disqualify themselves under § 455(a):

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in [§ 455(a)] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

S. Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d § 3549, at 623-24). Unlike objections under § 455(b), § 455(a) objections can be waived after a court gives full disclosure of the grounds for disqualification. 28 U.S.C. § 455(e).

10

Subsection 455(b) spells out the circumstances in which a judge must disqualify himself because of his relation to participants in a case. The specific provisions at issue here are § 455(b)(1), which requires a United States judge to disqualify himself from a case if "he has a personal bias or prejudice concerning a party," and § 455(b)(5)(iii), which requires recusal if the judge "or a person within the third degree of relationship to [him] . . . [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The interest described in § 455(b)(5)(iii) includes noneconomic as well as economic interests. Potashnick v. Port City Const. Co., 609 F.2d 1101, 1113 (5th Cir.), cert. denied, 449 U.S. 820 (1980). Subsection 455(e) provides that a § 455(b) conflict cannot be waived.

## C.

At the outset, we choose to address the defendants' argument that KPERS brought both its district court motion to disqualify and this petition for mandamus as a part of a strategic and tactical plan to delay and prevent the district judge from ruling on the pending summary judgment motions following our July 27, 1995, ruling reversing the district court's decision that a ten-year Kansas statute of limitations applied. After a thorough review of the record, we agree with defendants as to the Blackwell and Boatmen's matters and find the petition as to those matters to be untimely. With regard to Shook, we believe defendants' argument has merit, but we ultimately decline to find the petition untimely on that issue.

After our ruling that the ten-year Kansas statute of limitations does not apply to this case, KPERS undertook a flurry of actions which occupied the district court's time to the detriment of the efficient resolution of this case. As noted above, it filed a motion to have the court reconsider its April

11

1994 ruling regarding KPERS' proprietary capacity, it filed duplicative suits in Kansas state court necessitating the issuance of preliminary injunctions against it, and it filed a third motion to remand the case to Kansas state court.  In his order of October 25, 1995, on the renewed motion to remand, the district judge noted that "[s]ince the Eighth Circuit Court of Appeals' decision on July 27, 1995, KPERS has taken a number of steps, including the filing of this motion, to delay the expeditious resolution of this case."  (App. Pet'r at 359.)  When we affirmed the temporary injunctions prohibiting KPERS from pursuing the duplicative state court suits it filed after our July 27, 1995, statute of limitations decision, we noted that KPERS' purpose in filing the duplicative state suits was to obtain a favorable decision in the Kansas courts on the same statute of limitations issue we had already decided.  We found the district court's finding that, by filing the duplicative state suits, KPERS had merely tried to "`carve up what was one case into separate cases with separate claims, all leading to a subversion of the RTC's right to remove the entire case'" to be fully supported by the record and not clearly erroneous.  KPERS v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1070 (8th Cir. 1996).

The basic underlying facts concerning Judge Bartlett's stock ownership in Boatmen's parent company and his existing relationship with Blackwell's probate and tax lawyers were known to KPERS for over a year before it filed its petition for mandamus with us.  On December 16, 1994, it asked for and received a ruling from Judge Bartlett on its then pending recusal request which had asserted the Blackwell and Shook matters.  KPERS sought no relief from Judge Bartlett's denial of the request.  Instead, as noted above, it embarked on full-scale trial preparation, knowing all along of the trial judge's stock holdings in Boatmen's parent company and the existence of the related suit against it by Boatmen's, filed December 12, 1994, pending before Judge Whipple and of any potential for collateral effect it now asserts.  It waited nearly a year after Judge Bartlett disclosed his stock holdings before

12

raising any objection about them.  Although Blackwell was allowed to intervene by our July 27, 1995, decision, and although KPERS had first asserted its objection about Blackwell the previous November, it waited until two days before the scheduled October 18, 1995, hearing on its renewed motions to remand and to reconsider the question of its proprietary capacity, to again seek the judge's recusal based on the Blackwell matters. Our review of KPERS' pattern of conduct leads us to the conclusion that the defendants' allegation that KPERS' recusal motion and this petition were filed for tactical and strategic reasons, as opposed to concern about the impartiality of the trial judge, is correct.  "In the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns."  In re Cargill, Inc., 66 F.3d 1256, 1262-63 (1st Cir. 1995). See also In re Int'l Business Machines Corp., 45 F.3d 641, 643 (2d Cir. 1995) ("[A] prompt application avoids the risk that a party is holding back a recusal application as a fall back position in the event of adverse rulings on pending matters.").

We have held in the past that even though § 455 has no express timeliness requirements, claims under § 455 will not be considered unless timely made.  Holloway v. United States, 960 F.2d 1348 (8th Cir. 1992); see Oglala Sioux Tribe v. Homestate Mining Co., 722 F.2d 1407, 1414 (8th Cir. 1983) ("Although § 455 does not include an explicit time limitation, we believe that a timeliness requirement is appropriate . . . ."); United States v. Bauer, 19 F.3d 409, 414 (8th Cir. 1994) ("This court has held that claims under § 455 `will not be considered unless timely made.'") (quoting Holloway).

We are aware that a recent panel which exercised its authority to reassign a case on remand to a different trial judge pursuant to 28 U.S.C. § 2106 pointed out that both Holloway and Bauer were § 455(b) cases alleging actual bias.  United States v. Jim Guy Tucker, 78 F.3d 1313 (8th Cir. 1996).  Oglala Sioux, however, which

13

predates both <u>Holloway</u> and <u>Bauer</u>, involved both § 455(a) and (b) claims and imposed a timeliness requirement upon both. <u>Tucker</u>, resting primarily on the exercise of this court's supervisory powers under 28 U.S.C. § 2106, specifically holds that a § 2106 request must be timely made and that a § 2106 request made in an appellate brief satisfies § 2106's timeliness requirement. Because it was not necessary for the <u>Tucker</u> panel to determine whether § 455(a) has a timeliness requirement attached to it in order to determine whether the Independent Counsel's § 2106 request was timely, we believe the panel's comments, to the extent they can be construed to indicate that there is no timeliness requirement for § 455(a) challenges, are not controlling in this case.

Our reading of <u>Oglala Sioux</u>, <u>Holloway</u>, <u>Bauer</u>, and <u>In re Apex Oil Co.</u>, 981 F.2d 302 (8th Cir. 1992), tells us that our circuit has consistently required timely action as to § 455 in general, i.e., as to both (a) and (b). We subscribe to the view that motions to recuse should not "be viewed as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings." <u>TV Communications Network, Inc. v. ESPN, Inc.</u>, 767 F. Supp. 1077, 1081 (D. Colo. 1991). We hold that KPERS' petition for a writ of mandamus is untimely as to the Boatmen's and Blackwell matters, that it is interposed for suspect tactical and strategic reasons, and that it can and should be denied for these reasons alone.

We also believe the timing of KPERS' petition as to Judge Bartlett's daughter's then prospective employment at Shook is suspect. When the judge disclosed in November 1994 his daughter's summer associate position with Shook, KPERS noted its concerns in a letter to the court, arguing that summer employment created a conflict because such positions often ripen into permanent positions. At that point, although KPERS expressed its concerns, KPERS felt an objection would be premature until Shook was actually a party in the case. Three days later, in a November 21, 1994,

14

letter, KPERS changed its stance and actually objected to the conflict. The court declined to disqualify himself, stating that he was persuaded by KPERS' original position that disqualification would be premature until Shook was indeed a party in this case.

Approximately one month later, in December 1994, Shook was allowed to intervene. Instead of renewing its motion, KPERS engaged in full-blown discovery for the next ten months and gave no indication that it was concerned about Judge Bartlett's impartiality during that time. For example, KPERS filed an amended complaint against Shook and made no mention of any conflict of interest. KPERS also deposed Shook's witnesses and disclosed five experts it intended to have testify against Shook. In mid-October 1995, after we issued an opinion that may render KPERS' cause of action against Shook untimely under the relevant statute of limitations, KPERS finally complained about the alleged conflict involving Judge Bartlett's daughter.

Given these facts, we believe KPERS' argument regarding Shook may be tainted with the same tactical motives as the arguments regarding the alleged conflicts with Blackwell and Boatmen's. Nonetheless, we note the factual development occuring in October 1995 -- Ms. Mook's acceptance of Shook's offer of permanent employment. Within two weeks of this development, and two days before a scheduled hearing on its renewed motions implicating the statute of limiations and seeking remand to state court, KPERS' alleged concern about Judge Bartlett's impartiality re-emerged. Because Ms. Mook's then prospective permanent employment at Shook at least altered the landscape slightly, we give KPERS the benefit of the doubt and do not find the request for disqualification untimely as to the Shook matter.

**D.**

Although we hold the conflict issues involving Blackwell and Boatmen's to be untimely, we turn to the reasons advanced by KPERS for disqualification, addressing each specific contention regarding Boatmen's, Blackwell, and Shook, respectively.

KPERS' first contention centers on Judge Bartlett's financial interest not in Boatmen's itself, but in the parent company of Boatmen's. The judge indisputably has such an interest. Accordingly, he disqualified himself from presiding over Boatmen's motion to intervene, and when Boatmen's motion was later stayed and Boatmen's filed a separate, related declaratory judgment action, that case was not assigned to Judge Bartlett. The question here, however, is whether Judge Bartlett's ownership of stock in the parent company of Boatmen's constitutes a conflict of interest under § 455(b)(5)(iii) or (a) in this case, where neither Boatmen's nor its parent company is involved.

KPERS contends that a conflict exists because Judge Bartlett's rulings in this case may have a collateral effect upon issues in Boatmen's separate declaratory judgment action. The issues in Boatmen's declaratory judgment action arise out of Boatmen's separate and distinct contractual obligations as trustee under trust indentures covering the Home Savings debentures purchased by KPERS and are not presented in the case pending before Judge Bartlett. Apart from its general assertion that there are overlapping issues between the two cases, KPERS has not shown the identicality of the issues involved sufficient to indicate that Judge Bartlett's rulings in this case will, or are likely to, result in preclusive effect. While it is true that Boatmen's cited Judge Bartlett's decision concerning the proprietary nature of KPERS to Judge Whipple in resisting KPERS' Eleventh Amendment defense, Boatmen's did not assert the decision under a collateral estoppel theory, and Judge Whipple was certainly free to come to a

16

contrary conclusion.  Having no specific allegation before us of a common remaining issue in the two separate cases, we do not view this case as one involving potential collateral estoppel.

KPERS also seems to argue that the possible persuasive authority of this case on the separate action brought by Boatmen's creates a § 455(b)(5)(iii) conflict.  KPERS' argument essentially invites us to speculate on whether a district judge would decide issues in a case before him a particular way in hopes of persuading a different judge presiding over a separate case to reach the same decision.  This speculation, as noted above, would not be based on any identified, remaining overlapping issue.  We decline to accept KPERS' invitation to engage in such unsupported conjecture.  We are confident that Judge Whipple will independently assess the merits of the arguments in the case before him.  At best, Judge Bartlett's alleged financial interest in this case in these circumstances is simply too remote, speculative, and contingent to be "an interest that could be substantially affected by the outcome of the proceeding" before him.  28 U.S.C. § 455(b)(5)(iii).

Furthermore, we are reluctant to fashion a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock.  We believe such a rule would paint with too broad a stroke.  By way of example, a judge holding stock in General Motors should not have to recuse from a case involving Ford Motor Company because some ruling he may make might be used as persuasive authority in a case against GM.  Cf. In re Placid, 802 F.2d 783, 786-87 (5th Cir. 1986) (rejecting argument that recusal is required when judge owns stock in nonparty bank and case before him may have impact on banking industry).  As a general matter, the administratively daunting task of identifying such tangential "interests" outweighs any benefit of eliminating the remote possibility of consequential bias.

17

The only authority KPERS cites to support its collateral estoppel argument is In re Aetna Casualty & Surety Co., 919 F.2d 1136 (6th Cir. 1990).  In Aetna, seven separate cases were brought by the FDIC against Aetna.  All of them were consolidated for trial. All of them involved the interpretation of the same provisions of Aetna's blanket banker's bond. Because the trial judge's daughter was a member of a law firm involved in four of the cases, the judge originally disqualified himself.  His daughter had participated in depositions when the cases were consolidated.  The trial judge later separated out for trial before him the three cases where his daughter's firm was not involved, and Aetna sought his recusal.  A majority of the judges of the Sixth Circuit joined Judge Kennedy's concurring opinion holding that because his daughter had been involved in the consolidated cases, the trial judge should not have severed the cases for trial, and should have remained out of all the cases, relying on § 455(b)(5)(ii).  KPERS draws upon dicta in Aetna, stating that because a decision in any one of the cases might be used collaterally in all the rest, an additional reason for questioning the trial judge's impartiality existed.  We do not find the Aetna dicta to be persuasive authority here, and our research has revealed no other authority for the proposition that a judge's interest in a nonparty company can create a conflict of interest mandating recusal under § 455(b)(5)(iii).

Given the facts of this case, we hold that KPERS has not carried its substantial burden of proving that Judge Bartlett's stock ownership in Boatmen's parent company creates a § 455(b)(5)(iii) conflict.  See Pope, 974 F.2d at 985.  KPERS has not proven that Judge Bartlett's stock ownership in the parent company of Boatmen's would be substantially affected by the outcome of this case where neither Boatmen's nor its parent is a party.  Cf. Oglala Sioux, 722 F.2d at 1414 (holding that, in an action determining title to certain Black Hills property, the district

18

judge was not required to recuse because he owned property in the vicinity).

KPERS' claim that the judge's interest in Boatmen's parent company creates an apparent conflict under § 455(a) also fails. Judge Bartlett disclosed his ownership of stock in Boatmen's parent company on October 26, 1994. From that time until almost a year later, conferences were held in which the parties and the court discussed various aspects of this case. Not once during this period of time did KPERS question the court's appearance of impartiality due to the separate case involving Boatmen's. Considering these facts, an informed person would not now reasonably question Judge Bartlett's ability to preside fairly over this case because of his interest in a nonparty company. An informed person might instead reasonably question the sincerity of KPERS' belated concern.

KPERS' second allegation of a conflict of interest concerns Judge Bartlett's relationship with Blackwell. As we noted above, Judge Bartlett disclosed to all of the parties in October 1994, when Blackwell sought to intervene, that probate and tax lawyers in Blackwell had rendered legal advice and services to him both for his personal estate planning and in the probate of his parents' estates. He informed them that while the work was nearly done, some matters remained to be completed and that his mother's estate remained open and Blackwell's representation was continuing as to the estate. He offered each party the opportunity to object to his continued handling of the case. KPERS made no objection, and in fact has acknowledged that it not only made no objection, but it expressly waived any such conflict. See KPERS letter of November 18, 1994, App. Pet'r at 195 ("Previously, we expressed no objection to Judge Bartlett's continued role as judge in this litigation by reason of his involvement with the estate and probate attorneys at Blackwell Sanders."), and Pl.'s Supp. Resp. to the Pets. to

19

Intervene at 14, n.6 ("Even though KPERS expressly waived the Blackwell Sanders conflict . . . .").

Despite its previous express waiver, and its admissions against its own interests that it "did not believe that Judge Bartlett's involvement with the Blackwell firm [by itself] warranted significant concern," KPERS now argues that Judge Bartlett should be disqualified because of his involvement with the Blackwell probate and tax lawyers under both § 455(a) and (b)(1) (a judge should disqualify himself "where he has a personal bias or prejudice concerning a party . . . ."). We believe the § 455(a) objection has been expressly waived by KPERS, and we are not persuaded that Judge Bartlett's role as a trustee of his late mother's real estate trust (the closing of which was part of the probate matters handled by Blackwell) requires a different result. What is important is that the relationship between Judge Bartlett and Blackwell and the fact that some matters remained to be fully completed were disclosed and any potential conflict waived.

With respect to the § 455(b)(1) actual personal bias or prejudice challenge, KPERS points to no specific instances where Judge Bartlett has demonstrated bias or prejudice in favor of Blackwell. See Liteky v. United States, 114 S. Ct. 1147, 1155 (1994) (distinguishing between the reality of bias or prejudice prohibited by § 455(b)(1) and the appearance of bias prohibited by § 455(a)). Instead, it relies upon the nature of the relationship discussed above. If KPERS was concerned that Judge Bartlett had a personal bias or prejudice in favor of Blackwell, that concern would have been triggered by the judge's initial disclosure in October 1994, of his then existing involvement with some of Blackwell's lawyers. While it is true that a § 455(b)(1) objection cannot be waived, it is still subject to the timeliness requirement of our cases. Here, Blackwell was permitted to intervene by our July 27, 1995, decision, and yet KPERS waited until October to raise the issue it had known about for a year. This delay,

20

considered in the light of the numerous activities KPERS then engaged in, such as the filing of additional actions in Kansas, gives us substantial reason to conclude that the present challenge was tactically motivated and untimely, and we so hold.[8]

Next, we address KPERS' third allegation of a conflict -- Judge Bartlett's daughter's prospective employment with Shook. Although Ms. Mook recently withdrew her acceptance of Shook's offer of employment, Judge Bartlett presided over this case and rendered at least two decisions denying reconsideration of previously decided issues before Ms. Mook's withdrawal of her acceptance.[9]  We therefore address this issue on the merits.

We begin our analysis on this issue by observing that an employment relationship between a party and a judge's son or daughter does not per se necessitate a judge's disqualification.  See Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 871 (9th Cir. 1991), cert. denied, 503 U.S. 984 (1992); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 882 F.2d 1556, 1568 (Fed. Cir. 1989), cert.

---

[8]KPERS also asserts that because Judge Bartlett is a former partner of Blackwell, his impartiality appears to be questionable.  We first note that Judge Bartlett has had no opportunity to respond to this argument, because KPERS did not raise this issue below.  Second, we question KPERS' assertion that its Kansas City attorneys did not know of Judge Bartlett's prior affiliation with Blackwell, a Kansas City firm, and in any event, the information was easily accessible.  See Almanac of the Federal Judiciary, vol. 1, at 41 (1995).  Finally, Judge Bartlett terminated his partnership with Blackwell when he was appointed to the bench in 1981.  In our view, the intervening 15 years are sufficient to erase any appearance of partiality stemming from his prior firm membership.

[9]We note that subsection (f) of § 455 provides a procedure by which a conflict stemming from a financial interest in a party may be cured, as long as that interest would not be substantially affected by the outcome of the case.  Because Judge Bartlett presided over the case and rendered decisions after the alleged conflict appeared or was discovered, we do not believe § 455(f) is applicable to this case, if indeed it covers a § 455(b)(5)(iii) conflict, a question on which we do not comment.

_denied_, 493 U.S. 1076 (1990). Rather, the determination of whether a conflict exists in a given situation is factually bound.

Upon careful review of these facts, we do not find an actual conflict under § 455(b)(5)(iii). First, Ms. Mook was not and would not, as a future employee of Shook, be involved in the present litigation. Cf. Hunt v. American Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1016 (11th Cir. 1986) ("We do not believe that a law clerk's acceptance of future employment with a law firm would cause a reasonable person to doubt the judge's impartiality so long as the clerk refrains from participating from the cases involving the firm in question."). Second, the actual employment relationship between Shook and Ms. Mook was not to ripen until September 1996. As the facts of this case demonstrate, many circumstances can change during the intervening period between the time a law student accepts an offer to work as an associate and the time the student graduates and actually goes to work. Third, Ms. Mook was to be a salaried employee with traditional employee benefits, not a partner whose income is directly related to the profit margin of the firm and could be substantially affected by the outcome of this case. See Potashnick, 609 F.2d at 1113 (distinguishing a partner's interest in a case from a salaried associate's interest); United States ex rel. Wienberger v. Equivfax Inc., 557 F.2d 456, 463-64 (5th Cir. 1977) , cert. denied, 434 U.S. 1035 (1978) (same). In addition, Shook is only one of a number of defendants; if KPERS prevails, Shook's share of the damages would likely be covered by the insurance the briefs show it has and almost certainly not affect the salary or benefits of a first-year associate. Given these facts and the contingencies they create, we find it extremely unlikely that any loss Shook could suffer in this case would trickle down to Ms. Mook. We therefore find that Ms. Mook did not have a financial interest in this case. Moreover, Ms. Mook's personal future was not dependent on Shook's success or failure, as her credentials evidently place her in a position where she could obtain employment with other law firms. We therefore reject KPERS'

assertion that Ms. Mook has any other interest in Shook that could be substantially affected by the outcome of this case. Cf. Wienberger, 557 F.2d at 463-64 (holding that when judge's son is an associate with law firm representing defendant, but is not actively participating in the case, judge need not recuse himself), cert. denied, 434 U.S. 1035 (1978).

KPERS' argument that Ms. Mook's employment with Shook creates an apparent conflict under § 455(a) is a more difficult issue, for even if no actual conflict exists, we must be confident that an informed person would not reasonably believe the judge's impartiality was compromised. Upon careful review of this entire record, however, we believe KPERS has failed to show that a denial of a motion to recuse under these facts would be an abuse of discretion, and keeping in mind the procedural context of this case, we do not believe KPERS has made the showing necessary to warrant the extraordinary remedy of a writ of mandamus. We again note that we view this situation through the eyes of a reasonable person informed of all the facts of this case, including: (1) that Ms. Mook has not and will not be personally involved in this litigation; (2) that in KPERS' first motion for recusal, which the judge denied, KPERS viewed summer employment as the equivalent of permanent employment because the former often ripens into the latter, and consequently there is little in the way of changed circumstances to support the present challenge; (3) that KPERS did not even challenge Judge Bartlett's ruling on KPERS' first Shook objection; (4) that during the next ten months, including the summer of Ms. Mook's employment with Shook, KPERS approached the pretrial litigation with Shook in the case as a party as if no conflict existed; (5) that prior to his decision on the recusal motion, no one, including KPERS, suggests that Judge Bartlett exhibited any apparent personal bias for or against any party; (6) that when KPERS' second challenge of the potential conflict finally emerged, it appeared only after KPERS was facing a potentially fatal decision on a motion for summary judgment; (7) that Ms. Mook

was not actually employed with Shook at the time KPERS brought this petition; and (8) that Ms. Mook had accepted an offer to join the firm prospectively only as a first-year, salaried associate, not a partner with substantial interests in the profit margin of the firm. Considering all of this, as well as the procedural history we traced in Section I of this opinion, we do not believe KPERS has provided us with the necessary showing that an informed person would question the judge's impartiality, particularly when it is now clear that Ms. Mook will not be employed by Shook at all.

Finally, KPERS argues that all of these facts cumulatively create an appearance of a conflict of interest in violation of § 455(a). To the contrary, considering all of the facts and the procedural context of this case, including KPERS' delay and motivation, the big picture reveals to a reasonable person a complex case involving an inordinate number of pretrial motions, an underlying struggle between the parties to determine the choice of forum, a tactical move made by a party who fears a looming adverse decision, and an experienced district judge who is attempting to efficiently resolve the case.

## III.

Because we find KPERS' petition to be untimely as to the Blackwell and Boatmen's challenges, and because none of KPERS' allegations meet the substantial showing necessary to establish a clear and indisputable right to recusal and a nondiscretionary duty on the district judge to disqualify himself, we deny the petition for a writ of mandamus.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

24