**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2112

_____

James A. Neal, Director of          *
Arkansas Supreme Court             *
Committee on Professional          *
Conduct,                           *
                                   *
          Plaintiff/Appellee,      *
                                   *
     v.                            *
                                   *
Jimmie L. Wilson,                  *
                                   *
          Defendant/Appellant,     *
                                   *
     v.                            *
                                   *
Jack Holt, Jr., Member of the      *
Supreme Court of the State of      *
Arkansas; Robert H. Dudley,        *
Member of the Supreme Court of     *     Appeal from the United States
the State of Arkansas; Tom         *     District Court for the
Glaze, Member of the Supreme       *     Eastern District of Arkansas.
Court of the State of Arkansas;    *
Donald Corbin, Member of the       *
Supreme Curt of the State of       *
Arkansas; John Lineberger,         *
Chancery Judge of the Fourth       *
Judicial District of Arkansas;     *
Members of Arkansas Supreme        *
Court Committee on Professional    *
Conduct; Robert Donovan,           *
Attorney for the Arkansas          *
Supreme Court Committee on         *
Professional Conduct; John Doe,    *
Defendants and other unknown       *
John Doe Defendants, known and     *
unknown, each individually and     *
in his official capacity as set    *
out herein; Ken Reeves,            *
Chairman; Sue Winter, Secretary;   *
Carlton Bailey, Member of the      *
Arkansas Supreme Court Committee   *
on Professional Conduct; Allen     *

Humphries, Member of the                    *
Arkansas Supreme Court Committee*
on Professional Conduct;            *
Richard A. Reed, Member of the      *
Arkansas Supreme Court Committee*
on Professional Conduct; Burt       *
Virden, Member of the Arkansas      *
Supreme Court Committee on          *
Professional Conduct; Patricia      *
Youngdahl, Member of the            *
Arkansas Supreme Court Committee*
on Professional Conduct,            *
                                    *
          Third Party               *
          Defendants/Appellees.     *
                            _____

              Submitted:  January 15, 1997

                 Filed: April 22, 1997
                            _____

Before WOLLMAN and FLOYD R. GIBSON, Circuit Judges, and
     MONTGOMERY,[1] District Judge.
                            _____

WOLLMAN, Circuit Judge.


     Jimmie Wilson appeals from the district court's[2] order remanding his
disbarment case to state court and dismissing a complaint Wilson filed
against various Arkansas officials.  We affirm.


## I.  Background

     The background of this case stretches back almost seventeen years and
involves numerous proceedings in state and federal court.

---

     [1]The HONORABLE ANN D. MONTGOMERY, United States District Judge
for the District of Minnesota, sitting by designation.

     [2]The Honorable H. Franklin Waters, United States District
Judge for the Western District of Arkansas, sitting by designation.

Wilson, an African-American from Helena, Arkansas, has been a lawyer, farmer, civil rights activist, and state legislator. Wilson borrowed money for his farm from the Farmers Home Administration between 1980 and 1982, securing the loan with a lien on his crops. Wilson attempted to avoid the government lien and was convicted in 1985 of knowingly disposing of property mortgaged to a government agency, unlawfully converting money of the United States, and conspiring to defraud the United States. See United States v. Wilson, 806 F.2d 171 (8th Cir. 1986). His conviction was ultimately reversed in 1989 because of a Batson violation at his trial. See United States v. Wilson, 884 F.2d 1121 (8th Cir. 1989) (en banc). Wilson subsequently pleaded guilty in 1990 to five misdemeanor counts of converting property mortgaged or pledged to a farm credit agency and converting public money to personal use and was sentenced to imprisonment and probation.

Because of his conviction, Wilson was suspended from practice by the United States District Court for the Eastern District of Arkansas in January of 1991, pending the outcome of any disciplinary proceedings. The court referred the matter to the Arkansas bar authorities, specifically James Neal, the executive director of the Arkansas Supreme Court Committee on Professional Conduct (the Committee). The Committee decided that Wilson's conduct warranted disbarment. After Wilson refused to voluntarily surrender his license, the Committee filed a complaint for disbarment in the Phillips County Circuit Court. All of the circuit judges in that circuit recused themselves, and the Chief Justice of the Arkansas Supreme Court assigned a circuit judge from another circuit to hear the case. This circuit judge dismissed the complaint in 1993 on the ground it was time-barred, a ruling that was reversed by the Arkansas Supreme Court. See Neal v. Wilson, 873 S.W.2d 552 (Ark. 1994) (Wilson I).

The crux of Wilson's federal case stems from what happened when the case was remanded by the Arkansas Supreme Court to the Phillips County Circuit Court. The appointed circuit judge recused himself because of his disagreement with the supreme court's opinion. The supreme court subsequently appointed another outside circuit judge, John Lineberger, to hear the case in 1994. Wilson moved for Judge Lineberger's disqualification on the basis that there was a new circuit judge in Phillips County who had not recused himself who should hear the case. That judge was Olly Neal, an African-American, who had been elected in 1992 in a minority-majority district, newly created pursuant to a consent decree in a Voting Rights Act lawsuit. Neal was Wilson's former law partner and one of the attorneys who had represented Wilson in his criminal case. Neal also testified at Wilson's federal trial.

Judge Lineberger denied the disqualification motion on January 5, 1995, and set a trial date of June 13, 1995. At Wilson's instigation, a hearing was set before Judge Neal. Following the hearing, Judge Neal ruled on May 24, 1995, that he had jurisdiction. He then decided the merits of the case, concluding that Wilson's conduct warranted only a letter of reprimand. The Committee sought a writ of certiorari from the Arkansas Supreme Court. The supreme court issued the writ on June 12, 1995, ruling that Judge Neal did not have jurisdiction and quashing Judge Neal's orders. See Neal v. Wilson, 900 S.W.2d 177 (Ark. 1995) (per curiam) (Wilson II).

On June 13, 1995, before Wilson's trial began, he removed the case from Judge Lineberger's court to the district court, citing 28 U.S.C. § 1443(1) as the basis for removal. Wilson filed a counterclaim and third-party complaint against numerous state officials, including Neal, the members of the Committee, the justices of the Arkansas Supreme Court who formed the majority in

<u>Wilson II</u>, Judge Lineberger, and John Doe defendants.  Wilson alleged violations of his federal constitutional and statutory rights and sought declaratory and injunctive relief.  <u>See</u> <u>Neal v. Wilson</u>, 920 F. Supp. 976, 982-83 (E.D. Ark. 1996) (<u>Wilson III</u>).

The case was assigned to United States District Judge George Howard, Jr.  After briefing, Judge Howard recused himself because of the district court's initial reference of Wilson to the state bar authorities for disciplinary action in 1991 and directed that the case be assigned to a judge from outside the Eastern District of Arkansas.  Judge Waters was subsequently assigned the case.

The district court first concluded that Wilson's attempted removal of his disbarment case was improper.  Even assuming that Wilson had pleaded causes of action under 42 U.S.C. § 1981 or the Voting Rights Act, the court concluded that Wilson had not met the requirements for section 1443(1) removal because he had failed to show that he would be unable to adequately enforce his rights in state court.  The court also concluded that the removal was untimely and remanded the case to state court.  <u>See</u> <u>Wilson III</u>, 920 F. Supp. at 983-86.  With regard to the merits of Wilson's complaint, the district court concluded that it should abstain under the <u>Younger</u> abstention doctrine.  It also concluded that the <u>Rooker-Feldman</u> doctrine precluded what would be essentially federal court review of the Arkansas Supreme Court's decision regarding Judge Lineberger's appointment.  The court then dismissed Wilson's complaint.  <u>See</u> <u>id.</u> at 986-991.  Wilson subsequently moved for reconsideration and requested that Judge Waters recuse himself for the same reason given by Judge Howard.  The district court denied both motions.

On appeal, Wilson argues that he met the requirements of section 1443 for removal, that his petition for removal was timely,

that the district court erred in abstaining, that the district court erred applying the Rooker-Feldman doctrine, and that Judge Waters erred in refusing to recuse himself.

## II. Discussion

### A. Removal/Remand

We may review the district court's remand order because this case involves a section 1443 removal. See 28 U.S.C. § 1447(d); Doe v. Berry, 967 F.2d 1255, 1257 (8th Cir. 1992) (per curiam). We conclude that the district court properly remanded Wilson's case to the state courts because Wilson's notice of removal was untimely; alternatively, the district court correctly concluded that Wilson did not meet the requirements for removal under section 1443(1).

Wilson admits that he was required to file his notice of removal "within thirty days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is . . . or has become removable." 28 U.S.C. § 1446(b). Wilson argues that the relevant "order or other paper" was the Arkansas Supreme Court's June 12, 1995, opinion in Wilson II affirming Judge Lineberger's appointment and quashing Judge Neal's orders. We disagree. As the district court stated, the Arkansas Supreme Court's opinion in Wilson II affirming the validity of its own prior action did not convert an otherwise unremovable case into a removable one. See Wilson III, 920 F. Supp. at 986. The thrust of Wilson's complaint is that his rights were violated when the Arkansas Supreme Court appointed Judge Lineberger to hear his case. The Arkansas Supreme Court made this appointment in May of 1994, and Wilson did not file his notice of removal within thirty days of his receipt of this order. Even

reading the record in the light most favorable to Wilson, the thirty-day limitation period began running no later than January 5, 1995, the day on which Judge Lineberger overruled Wilson's motion for disqualification in which Wilson raised his argument that Judge Neal had jurisdiction over the case. Wilson's June 13, 1995, notice of removal was thus untimely by a factor of months.

Even assuming that Wilson's removal notice was timely, the district court correctly ruled Wilson had not established his eligibility for a section 1443(1) removal. Under that statute, Wilson must show that he relies upon a law providing for equal civil rights stated in terms of racial equality. See 28 U.S.C. § 1443(1); Georgia v. Rachel, 384 U.S. 780, 792 (1966). Although we doubt that Wilson has done so, we will assume, as did the district court, that Wilson has sufficiently asserted causes of action under the Voting Rights Act and 42 U.S.C. § 1981. See City of Greenwood v. Peacock, 384 U.S. 808, 825 (1966) (Voting Rights Act and § 1981 fall within statutory definition of § 1443(1)). Wilson must show that he is denied or cannot enforce that right in state court. See 28 U.S.C. § 1443(1). "Removal is warranted only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts." Rachel, 384 U.S. at 800. Further, in "the unusual case . . . 'an equivalent basis could be shown for an equally firm prediction that the defendant would be "denied or cannot enforce" the specified federal rights in the state court.'" See Johnson v. Mississippi, 421 U.S. 213, 219 (1975) (quoting Rachel, 384 U.S. at 804).

Wilson has not met these stringent requirements. He has not shown that there is a state law preventing him from raising his federal claims in state court, nor has he shown the basis for an "equally firm prediction" that he will be unable to protect his

federal rights in state court. As the district court stated, Wilson's contentions regarding the defendants "boil down to little more than a belief by him that, since the state actors disagree with him and his lawyers, they must have racially discriminatory motives." Wilson III, 920 F. Supp. at 990. If, as Wilson fears, the Arkansas state courts do not respect and enforce his federal rights, Wilson's proper course of action is to seek direct review in the United States Supreme Court. See Berry, 967 F.2d at 1258 ("The issues involved . . . can be decided in the state courts, which have equal responsibility for ruling on federal constitutional issues. Berry may then seek review of any adverse rulings in the United States Supreme Court.").[3]

---

[3]Wilson makes assertions regarding the motives and possible bias of the state bar authorities. As the Supreme Court has stated:

> It is not enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial . . . . The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

City of Greenwood, 384 U.S. at 827-28.

-8-

B. Wilson's complaint

The district court lacked subject matter jurisdiction to consider the claims Wilson pleaded in his second amended complaint because of the Rooker-Feldman doctrine. We recently summarized the Rooker-Feldman doctrine:

> The Rooker-Feldman doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings. Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311, 75 L. Ed.2d 206 (1983). The only court with jurisdiction to review decisions of state courts is the United States Supreme Court. A federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court. A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995) (citations omitted). See also Bechtold v. City of Rosemount, 104 F.3d 1062, 1065-66 (8th Cir. 1997).

Wilson's complaint repetitively recites the facts of the case and alleges that these facts show violations of the Fifth, Fourteenth, and Fifteenth Amendments, the Voting Rights Act,[4] 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and Arkansas state law. As relief, Wilson requested removal of the Phillips County Circuit

---

[4]Wilson's Voting Rights Act claim is based on an alleged violation of the consent decree in Hunt v. Arkansas, No. PB-C-89-406 (E.D. Ark. Sept. 24, 1992).

-9-

Court case and the Arkansas Supreme Court case to the federal court "for a determination of the constitutional rights of [Wilson]," an injunction preventing the defendants from further seeking Wilson's disbarment, an order dismissing the disbarment complaint filed against Wilson, and recognition "that the Order of Judge Neal entered in this matter [is] a legal judgment."

Wilson's complaint does not present a general challenge to the constitutionality of the Arkansas procedural rules regarding attorney disbarment. See Feldman, 460 U.S. at 486 (district courts may entertain general challenges to state bar rules). In our view, the district court could not review Wilson's claims and grant relief without effectively reviewing and reversing the decisions of the Arkansas Supreme Court in Wilson I and Wilson II, particularly its conclusions that the disbarment action was not barred by the statute of limitations and that Judge Lineberger, rather than Judge Neal, had jurisdiction over Wilson's disbarment trial. Thus, the district court lacked jurisdiction under the Rooker-Feldman doctrine to consider Wilson's complaint because his federal claims are inextricably intertwined with his state case.

Alternatively, to the extent that any portion of Wilson's complaint survived the jurisdictional bar of the Rooker-Feldman doctrine, the district court correctly ruled that Younger abstention was warranted under the standard of Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982). The only Middlesex element in dispute is whether there is "an adequate opportunity in the state proceedings [for Wilson] to raise constitutional challenges." Id. at 432. Wilson has not pointed to any state obstacle preventing him from raising his federal claims in the state proceedings. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987) (burden on plaintiff to show that state procedural law barred presentation of claims); Hirsh v. Justices of

<u>Supreme Court of California</u>, 67 F.3d 708, 713 (9th Cir. 1995).  The Arkansas Supreme Court has in the past considered constitutional claims presented during attorney disciplinary hearings.  <u>See</u> <u>Arens v. Committee on Professional Conduct</u>, 820 S.W.2d 263 (Ark. 1991); <u>Sexton v. Arkansas Supreme Court Comm. on Professional Conduct</u>, 774 S.W.2d 114 (Ark. 1989); <u>Eaton v. Supreme Court of Arkansas</u>, 607 S.W.2d 55 (Ark. 1980).  Because Wilson has the opportunity to raise his federal claims in the state proceedings, <u>Younger</u> abstention is appropriate.  <u>See</u> <u>Middlesex</u>, 457 U.S. at 432; <u>Hirsh</u>, 67 F.3d at 713.

Wilson argues that the state authorities have acted in bad faith by seeking the reversal of two circuit court decisions favorable to Wilson and that the conduct of the state authorities and the Arkansas Supreme Court shows that Wilson's federal rights will not be honored in state court.  <u>See</u> <u>Middlesex</u>, 457 U.S. at 435 (bad faith, harassment, or extraordinary circumstances justify exceptions to abstention).  We remind Wilson that we may not engage any presumption "that the state courts will not safeguard federal constitutional rights."  <u>Id.</u> at 431; <u>Hirsh</u>, 67 F.3d at 713 ("one who alleges bias 'must overcome a presumption of honesty and integrity in those serving as adjudicators'")(quoted cases omitted).  We agree with the district court that Wilson has proffered no evidence of bad faith, harassment, or other circumstance that might render abstention inappropriate.  The Arkansas Supreme Court reversed the two previous circuit court rulings on state law grounds, and Wilson has the opportunity in the current state proceedings to raise his federal claims.  As we noted above, the district court characterized Wilson's contentions of bad faith by the defendants as "little more than a belief by him that, since the state actors disagree with him and his lawyers, they must have racially discriminatory motives."  <u>Cf.</u> <u>Peterson v. Sheran</u>, 635 F.2d 1335, 1340 (8th Cir. 1980) (disbarred lawyer argued Minnesota

Supreme Court biased against him and he would not have "real opportunity" to raise claim before that court; allegations not sufficient because he alleged only general bias because of previous proceedings in case and hypothetical reactions of state judges to his public criticism).[5]

## C.  Recusal

Wilson argues that Judge Waters should have recused himself for the same reason given by Judge Howard.  We disagree.  Judge Howard recused himself because the District Court for the Eastern District of Arkansas had referred Wilson's disciplinary matter to the Arkansas bar authorities. Because Judge Waters was not involved in that decision, the rationale for Judge Howard's recusal does not apply to him.  We presume that Judge Waters is impartial, and Wilson has not met his "'substantial burden of proving otherwise.'"  In re Kansas Pub. Employees Retirement Sys., 85 F.3d 1353, 1358 (8th Cir. 1996) (quoted case omitted).[6]  Accordingly, Judge Waters did not abuse his discretion in refusing to recuse himself.  See id. (citing 28 U.S.C. § 455(a)).

## III.  Conclusion

Resolution of this matter should take place in the courts of Arkansas, not the federal courts.  The judgment is affirmed.

---

[5]We also agree with the district court that our case of Lewellen v. Raff, 843 F.2d 1103 (8th Cir. 1988), is distinguishable from the present case.

[6]We also disapprove of Wilson's decision to wait until after Judge Waters had issued an unfavorable ruling before moving for recusal.

A true copy.

Attest:

    CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.