Linda SNIDER, et al., Plaintiffs,

v.

CITY OF EXCELSIOR SPRINGS,
MISSOURI, et al.,
Defendants.

No. 97–0085–CV–W–3.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 25, 1997.

Frank Wendt, Angela K. Green, John M. Waldeck, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for Linda Snider, Robert Carver, Donna Carver, Dennis Murphy, Lea Murphy, Fred Thorp, Ruth Thorp, Albert Teepen, Barbara Teepen, Ronald Tavernaro, BarbaraTavernaro.

Douglas R. Richmond, S'Lee Arthur Hinshaw, II, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for City of Excelsior Springs, Mo., Land Clearance.

David L. Heinemann, Michael William Atchison, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for Millennium Management Co.

## ORDER

SMITH, District Judge.

Pending before this Court are the Defendants, City of Excelsior Springs, Missouri (the "City") and Land Clearance for Redevelopment Authority of Excelsior Springs, Missouri ("LCRA") Motion to Dismiss or in the Alternative, for Summary Judgment (Doc. # 11). Also pending before this Court is Defendant, Millennium Management Company's Motion to Dismiss or Alternatively for Summary Judgment (Doc. # 15). Upon consideration of the parties original and supplemental briefs in this matter, the motions to dismiss are granted. Further, Plaintiffs Motion for Certification of a Plaintiff Class and for Hearing (Doc. # 42); Defendants Motion to Strike Plaintiffs Amended Class Action Complaint (Doc. # 47 & # 48); Plaintiff's Motion for Leave to File Amended Complaint (Doc. # 49) and Defendants Motion to Stay Pending Resolution of State Court Proceeding (Doc. # 55) are denied as moot.

## BACKGROUND

This case was originally filed with this Court on January 22, 1997. The Plaintiffs claim civil rights violations and ask for damages and relief from a state court condemnation proceeding which terminated their timeshare interests in the Elms Hotel. Plaintiffs Amended Complaint was filed on September 12, 1997 praying for damages from the Defendants for civil rights violations, contractual right violations and due process violations. Defendants filed a motion to dismiss or in the alternative, for summary judgment. Defendants contend that Plaintiffs are asking this Court to determine that the state courts' decision was wrongly decided and such relief

is precluded by the *Rooker–Feldman* doctrine. We agree that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine.

The subject of this lawsuit involves timeshare interests sold in the Elms Resort Hotel located in Excelsior Springs, Missouri. The Elms Hotel has been in existence since 1888 and would draw many visitors each year for its natural mineral waters. The Hotel sits in the middle of downtown Excelsior Springs, Missouri. In the early 1980's, the owner of the Elms Hotel leased the Hotel to the Elms Hotel Operating Company, Inc., which, in turn, subleased portions of the Hotel to Elms Timesharing Intervals, Inc. ("ETI"). ETI then, began selling vacation licenses[1] for their leased portion of the Hotel.[2] The vacation licenses allowed license holders to reserve rooms on the designated floors of the Hotel or to exchange their licensed time for stays at other resorts.[3] In order to buy a license the customers had to make a one-time cash payment, sign a "Gold Key" timeshare agreement and agree to pay annual fees. The timeshare licenses were sold for a period of thirty (30) or fifty (50) year terms. Plaintiffs in this case were buyers of a timeshare license or were "Gold Key Club" members.

In the 1980's the Elms Hotel was sold twice and several million dollars was spent to renovate the Hotel and keep the property economically viable. In 1989 the Elms Redevelopment Corporation acquired the Hotel and eventually acquired nearby residences and property near the Hotel. In 1991 the Elms Redevelopment Corporation filed for bankruptcy under Chapter 11. While the bankruptcy was pending, a flood damaged the Hotel and the surrounding property. The City of Excelsior Springs entered the bankruptcy in 1993 to try to resolve the problems plaguing the Hotel and the surrounding property. The creditors could not agree on selling the Hotel so no resolution was reached and the Bankruptcy Court dismissed the Chapter 11 case in May 1995.

The Hotel and the surrounding property continued to have problems. The City sought proposals from developers to try and rehabilitate the Hotel but did not find any developers to buy it.[4] The City never found a developer who could redevelop the Hotel with all the timeshare interests in place. The City and its LCRA declared the Hotel and its surrounding properties to be a blighted area and condemned the Hotel and property on August 17, 1995.[5] On July 31, 1996 the LCRA became the owner of the Hotel and the surrounding property by order of condemnation. On October 24, 1996 the LCRA conveyed the Hotel and property to Millennium Management Company ("Millennium") and by November 1996 the City, the LCRA and Millennium entered into an agreement to redevelop the Hotel and the surrounding property.

Plaintiffs claim that the City and LCRA secretly planned the condemnation order to eliminate the timeshare licenses so that the property could be redeveloped free from any

1. The parties dispute whether the timeshare agreements were "licenses" or "interests." This Court will call them "licenses" for consistency purposes only and will not decide whether the Plaintiffs had "interests" in the real estate or merely vacation "licenses." The state court is the proper venue to decide the nature of the Plaintiffs interests.

2. ETI leased the second, third, fourth and fifth floors of the Hotel for their timesharing vacation licenses. The timesharing agreements were created in 1984 and ranged from vacation licenses for one or two bedroom units. The units were usually available to the agreement holders for about seven days every year for a term of years.

3. The timeshare licenses were sold in order to create "a stable customer base and income stream" for the Hotel.

4. The Hotel's ownership was clouded by a series of easements, liens and twenty million dollars in loans and bonds. Plaintiffs claim the City and the LCRA planned the condemnation because it was the only way to get a clean title to the property without compensating the timeshare holders. Defendants claim that the City really wanted to redevelop the Hotel and surrounding area because it was vital to the economy and so it condemned the Hotel hoping to attract a private developer. The City then implemented several redevelopment plans and projects offering tax increment financing for development of the area.

5. On August 29, 1995 the City and the LCRA filed a Petition in Condemnation in the Circuit Court of Clay County, Missouri styled *City of Excelsior Springs, Missouri, et al. v. Elms Redevelopment Corp. et al.*, The Petition named nine Gold Key Club members as class representatives.

encumbrances. Plaintiffs allege the Defendant's tried to certify a class in the Clay County Circuit Court comprising of all the timeshare license holders so that the condemnation proceeding would bind all holders to the order .[6] Plaintiffs claim that the timeshare class was certified but was never represented by counsel nor participated in any way in the condemnation proceeding. Moreover, Plaintiffs allege that notice was never sent to over 850 timeshare license holders of the condemnation proceeding before the order of condemnation was signed. The Plaintiffs in this case are some of those timeshare interest holders who claim they did not receive the compensation that was due to them for their interest in the timeshare agreements. The City estimated the loss to the timeshare holders was six million dollars.

The Defendant's claim that the *Rooker–Feldman* doctrine precludes this Court from having jurisdiction to hear Plaintiff's claim. The Plaintiffs contend that this Court is not barred by the *Rooker–Feldman* doctrine because they were not parties to the state court proceeding, had no opportunity to be heard, and are only asking for relief from the Defendant's actions.

## DISCUSSION

The Defendants originally filed a motion to dismiss for failure to state a claim upon which relief could be granted. "The federal courts are under an independent obligation to examine their own jurisdiction," *United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995), and upon review of Defendants motion, the Court was concerned that it may not have jurisdiction over the matter. The Court requested that the parties provide supplemental briefing regarding the question of subject matter jurisdiction. Upon consideration of the parties briefs, this Court finds that it lacks subject matter jurisdiction over this case.

A motion to dismiss should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Davis v. Hall,* 992 F.2d 151, 152 (8th Cir.1993) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the Plaintiffs. To the extent that Defendants argue that the Plaintiffs have failed to state a claim for which relief can be granted, the Court's inquiry is limited to an examination of the four corners of the complaint. This limitation does not apply to Defendant's allegations of lack of jurisdiction pursuant to Rule 12(b)(1).

The Eighth Circuit has established that Rule 12(b)(1) motions are not governed by Rule 56, summary judgement standards. *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990). Jurisdictional issues are threshold questions and "whether they involve questions of law or of fact," they "are for the court to decide." *Osborn,* 918 F.2d at 729. Plaintiff has the burden of proving that jurisdiction exists and the court must resolve the jurisdictional issue first. *Id.* A dismissal for lack of subject matter jurisdiction is appropriate when the trial court weighs the evidence and is not satisfied as to the existence of its power to hear the case. *Id.*

"The *Rooker–Feldman* doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings." *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of*

**6.** On October 17, 1995 the City and the LCRA moved to certify the defendant class of Gold Key Club members and notified the nine named class plaintiffs. On October 23, 1995 the Clay County Circuit Court certified the Gold Key Club member class. The Circuit Court appointed commissioners to value the property being condemned and to determine each defendants' interest in the condemnation award. The commissioners determined net damages of $675,000 on March 14, 1996. On April 1, 1996 the City and LCRA selected Millennium to redevelop the Hotel and area. On July 31, 1996 the Clay County Circuit Court entered its order finalizing the Elms Hotel condemnation. The Circuit Court found that six deeds of trust securing obligations in excess of $20 million encumbered the Elms and that the City and LCRA were beneficiaries under the deeds. The City and the LCRA subsequently received superior rights and interests to the property and the $675,000 condemnation award.

Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983)). "The only court with jurisdiction to review decisions of state courts is the United States Supreme Court." *Neal v. Wilson,* 112 F.3d 351, 356 (8th Cir. 1997) (citing *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995)).

"A federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court. A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, *Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling."

*Id.* In *Postma v. First Federal Savings & Loan of Sioux City,* the plaintiffs claim they were denied procedural due process in the state court foreclosure proceedings. 74 F.3d 160, 162 (8th Cir.1996). They allege they were denied due process because they did not receive constitutionally adequate notice and were denied a fair opportunity to participate in the foreclosure proceedings in state court. The Eighth Circuit affirmed the district court's ruling that it lacked subject matter jurisdiction because "their current claims in the present case can succeed only to the extent that the state court wrongly decided the foreclosure action." 74 F.3d at 162. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other that a prohibited appeal of the state-court judgment." *Id.* (citing *Keene Corp. v. Cass,* 908 F.2d 293, 296–97 (8th Cir.1990) (citation omitted)).

■ This case is very similar to the claims in *Postma* because the Plaintiffs claim they were denied due process and were not given fair representation or an opportunity to be heard on their "interests" in the Elms Hotel condemnation proceeding. Ultimately, this Court is being asked to exclude the Plaintiffs from adhering to the Clay County Circuit Court's judgment; reinstate the Plaintiff's timeshare interests and compensate the Plaintiffs for the "time" they have lost due to the conduct of the Defendants. Plaintiffs claim their federal complaint is not "inextricably intertwined" with the claims asserted in state court. Plaintiffs also claim they were not parties to the state court condemnation decision and the state court did not decide the issues they are addressing to this Court.

First, the relief Plaintiffs are requesting would, if granted, essentially be a reversal of the state court condemnation decision. The Clay County Circuit Court entered a decision on July 31, 1996, granting the condemnation request of the City and entering judgment for the condemnation award. The Clay County Circuit Court did not award any damages to the timeshare license holders. If this Court granted the Plaintiffs immunity from the state court condemnation award so that Plaintiffs could sue for damages and their "interests" in the Hotel it would render the entire state court condemnation proceeding worthless. Any relief the Plaintiffs want regarding the conduct of the Defendants during the state court proceeding, wherein the conduct directly relates to the state court decision, must be requested in state court. This Court cannot grant relief to the Plaintiff without disrupting the final judgment in the Clay County Circuit Court condemnation proceeding.[7]

Second, the Plaintiffs were "parties" in the state court proceeding. Granted, the Plaintiffs claim they did not receive notice that they were parties to the proceeding but nevertheless, a class was certified and the interests were considered in the state court proceeding. The lack of notice problem should be an appeal of the state court decision, not a federal suit, when the relief requested would void the effect of the decision.

7. Plaintiff's claim this Court has jurisdiction to order that Plaintiffs are not "bound by the condemnation award" entered in state court. However, the effect of such an order, if entered, would be to restart the whole condemnation process from the commissioners' evaluation of the net worth of the Hotel to the award of distribution if the Plaintiffs wanted priority for their timeshare licenses. This Court cannot "redo" the decision already made in state court.

Third, Plaintiff's claim the issues before this Court were not decided in the state court proceeding because they were not parties to that proceeding and therefore could not present the issues. Again, the conduct of the Defendants and the decisions regarding the timeshare holders were decided in the Clay County Circuit Court. Any dispute with the state court's resolution of those issues should be appealed to state court. This Court simply lacks the subject matter jurisdiction to reverse or destroy the effect of a state court's final judgment.

### CONCLUSION

Defendant's Motion to Dismiss is granted because this Court lacks subject matter jurisdiction. All other pending motions are denied as moot.

IT IS SO ORDERED.